**MURILLO LTDA. and Herman Hollander, Inc., Libelants,**

v.

**THE BIO BIO, THE PARAGUAY, THE ARGENTINA, their engines, boilers, etc., Rederiaktiebolaget Nordstjernan, Axel Axelson Johnson and Johnson Line, Respondents.**

United States District Court,
S. D. New York.

Jan. 10, 1955.

Hill, Rivkins, Middleton, Louis & Warburton, New York City (Yorkston W. Grist, Elmhurst, John G. Poles, New York City, of counsel), for libelants.

Haight, Deming, Gardner, Poor & Havens, New York City (Tallman Bissell, New York City, of counsel), for respondents.

MURPHY, District Judge.

This is a motion by respondents for an order declining jurisdiction and dismissing the libel on the grounds that the parties have consented in advance to exclusive jurisdiction of the courts of Sweden and that this tribunal is an inconvenient forum. The suit is for shortage from three shipments of iron bars moving from Antwerp, Belgium, to Arica, Chile, aboard the S. S. Paraguay, S. S. Argentina and S. S. Bio Bio in June, July and August of 1953, respectively. The respondent vessels are under the Swedish flag and owned by the respondent Swedish corpo-

ration, Rederiaktiebolaget Nordstjernan. The other respondents are Swedish corporations and residents. Libelants are respectively a Bolivian and a New York corporation. The shipper and seller of the cargoes was Etablissements Frere-Bourgeois S.P.R.L. of Belgium. Libelant Herman Hollander, Inc., the New York corporation financed the transaction, paid the seller, received the bills of lading, shipper's invoices and insurance certificates, and then surrendered these documents to Murillo Ltda., the Bolivian corporation, upon payment by the latter. The bills of lading, issued at Antwerp and signed there by the shipper's agent and the agent for the master of the vessels, contain these clauses so far as here relevant:

> "In using this Bill of Lading the shipper expressly accepts and agrees to all its stipulations, exceptions and conditions whether written, printed or stamped."

> \*   \*   \*   \*   \*   \*

> "Any claims in connection with the goods carried under this Bill of Lading must be filed against the Carrier in the City of Stockholm and settled according to Swedish Law. This jurisdiction is accepted by both parties to the exclusion of any other judicial authority \* \* \*."

> \*   \*   \*   \*   \*   \*

> "This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16th, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the Car-

rier of any of its rights and immunities or an increase of any of its responsibilities or liabilities under said Act. \* \* \*."

Respondents do not question, upon appearance and oral argument or in brief, the jurisdiction of this court either over their persons (process was served at their office where business is being done within this judicial district) or the subject matter of this controversy. We are not inclined to raise that question with respect to subject matter on our own.[1] The central issue posed is whether this court must and will exercise its power, and not whether it may. The case for declination is pressed upon the dual grounds that effect should be given to the stipulation giving exclusive jurisdiction to the Swedish courts as well as that this tribunal is an inconvenient forum.

To say that the effect to be given to contractual stipulations giving exclusive jurisdiction to foreign courts is controversial would be more than mild understatement. The question has been argued and reargued in a spate of judicial opinion and law review comment. Internecine dispute has crept even into the black-letter law of the American Law Institute: the drafters of the contracts restatement have been taken as disapproving such stipulations;[2] their brethren responsible for conflict-of-laws have been cited for approving them.[3] Yet even there, the darker view of such stipulations would make them illegal only when they "limit unreasonably the tribunal to which resort may be had \* \* \*."[4]

Similar doubt attends availability of forum non conveniens in admiralty suits

**1.** See Lauritzen v. Larsen, 345 U.S. 571, 575, 73 S.Ct. 921, 97 L.Ed. 1254; The Belgenland, 114 U.S. 355, 361–369, 5 S.Ct. 860, 29 L.Ed. 152; Mason v. The Blaireau, 2 Cranch 240, 263, 6 U.S. 240, 263.

**2.** See 22 Corn.L.Q. 456 (1937): "Such contracts are generally given no effect. \* \* \* This view is adopted by the American Law Institute in the Restatement of the Law of Contracts § 558."

**3.** See 45 Yale L.J. 1150, n. 2 (1936): "Further, the American Law Institute Restatement states that such stipulations are generally valid, Restatement, Conflict of Laws (1934) § 617, comment, and is supported by some cases."

**4.** Restatement, Contracts (1932) § 558. See also Hand, L. concurring in Krenger v. Pennsylvania R. Co., 2 Cir., 174 F. 2d 556, 561.

generally and especially ones where a United States citizen is a libelant.[5] In any event, the factors determinative of an inconvenient forum largely turn upon identical ones involved in the unreasonableness of a stipulation limiting the tribunal to which resort may be had, and accordingly both the ground of unreasonable stipulation and that of inconvenient forum should be appraised together.

In the instant case, the shipment complained of originated with a Belgian company and terminated in the hands of a Bolivian corporation. It moved in Swedish bottoms from Belgium to Chile. Neither the vessels involved nor their crews are alleged to have ever touched American waters or ports, or to be expected to do so. The bills of lading were executed in Belgium. They call for resolution of any controversy in Swedish courts to the exclusion of any other tribunal. Such provision is alleged to be valid under Swedish and Chilean law, and not claimed to be otherwise under the laws of Bolivia or Belgium. Any time limitation of a Swedish forum barring libelants has been waived by respondents for two months following disposition of this motion. Respondents are either Swedish corporations, citizens or residents. The only libelant to verify the sole pleading in this case is the Bolivian corporation. So far as appears at this stage of the proceeding, the testimony of weighers, handlers and crew in Belgium, Chile, Bolivia and from the Swedish vessels may be required at trial of any issue of fact that may be involved.

Against this mass of connecting factors unrelated to the United States, only the New York citizenship of one corporate libelant and the provision in the bills of lading alleging as governing law the Carriage of Goods by Sea Act are urged for retention of jurisdiction. The connection of that libelant with the claim asserted here merits scrutiny. The libel alleges generally with respect to both the Bolivian corporation and the New York one that "libelants were the shippers, consignees or owners of the shipments * * *, and bring this action on their own behalf and as agents and trustees on behalf and for the interests of all parties who may be or become interested in the said shipments as their respective interests may ultimately appear and libelants are entitled to maintain this action."

An affidavit on this motion by the New York libelant's vice-president indicates that any interest in this particular suit by that corporation has ceased long before its commencement.

"The arrangement was for Herman Hollander, Inc. to pay the Belgian shipper for the iron bars and in return to receive the shipping documents which would be held by Herman Hollander, Inc. until payment by the consignee to Herman Hollander. The shipping documents consisted of ocean bills of lading, shipper's invoices, and insurance certificates.

"Herman Hollander, Inc. had possession of the shipping documents at the time of discharge of the iron bars and did not transfer them to Murillo Limitada until some time after discharge when payment was made to Herman Hollander, Inc., who had title at the time of discharge."

Under circumstances of such nominal participation on the part of the only citizen of the United States involved, in addition to the consideration that testimony of such party as witness would add nothing in the face of shipping documents and evidence of weighing from distant locations, little if any support favoring retention of jurisdiction is supplied by joinder of the New

5. See Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A., 339 U.S. 684, 697–698, 70 S.Ct. 861, 94 L.Ed. 1206; Clark, C. J., concurring in Cerro De Pasco Copper Corp. v. Knut Knutsen, O. A. S., 2 Cir., 187 F.2d 990, 991.

York corporation as co-libelant.[6] With respect to the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq., as governing law, there is nothing to indicate that its widespread application by foreign courts in marine controversies cannot be matched by the tribunals of a maritime country such as Sweden.

In the light of all of the connecting factors, the reasonableness of the limitation of tribunal to the carrier's domicile is apparent. There is no reason why this court ought not to give it consideration.[7] Weighing thus this stipulation in the balance of conveniences, respondents have sustained the burden of making out the inconvenience of this forum.

Accordingly, the motion to dismiss the libel is granted.

Settle order.

6. Cf. Goldman v. Furness, Withy & Co., Ltd., D.C.S.D.N.Y., 101 F. 467.

7. The Tricolor, D.C.S.D.NY., 1 F.Supp. 934, 935, affirmed United States Merchants' & Shippers' Ins. Co. v. A/S Den Norske Afrika Og Australie Line, 2 Cir.,

65 F.2d 392; Cerro De Pasco Copper Corp. v. Knut Knutsen, O. A. S., D.C.S.D. N.Y., 94 F.Supp. 60, affirmed, 2 Cir., 187 F.2d 990; The Iquitos, D.C.W.D.N.D. Wash., 286 F. 383.