GENERAL MOTORS OVERSEAS OPERATION, DIVISION OF GENERAL MOTORS CORPORATION, Libelant,

v.

S.S. GOETTINGEN, her engines, boilers, etc., and Hamburg-Amerika Linie and U. S. Navigation Co., Inc., Respondents.

AMERICAN & FOREIGN TRADE CORP., F. & G. Anders, Curtiss Wright Corp., and Belzer-Werk, Libelants,

v.

S.S. GOETTINGEN et al., Respondents.

HENNINGSEN FOODS, INC., Libelant,

v.

S.S. GOETTINGEN et al., Respondents.

United States District Court
S. D. New York.
Jan. 15, 1964.

Kelly, Donovan, Robinson & Maloof, New York City, for libelants General Motors Overseas Corp. and Henningsen, Foods, Inc.; Donald H. Serrell, New York City, of counsel.

Hill, Rivkins, Louis & Warburton, New York City, for libelants American & Foreign Trade Corp. and others; Alan S. Loesberg, Martin B. Mulroy, New York City, of counsel.

Cichanowicz & Callan, New York City, for respondent Hamburg-Amerika Linie; Michael J. Ryan, New York City, of counsel.

FEINBERG, District Judge.

There are three motions before the Court to dismiss three libels. In each of the three cases,[1] the motion is brought by the same shipowner-respondent. The three libels, brought by three separate cargo interests, seek recovery for damage to cargo suffered in heavy seas in the North Atlantic while in transit aboard the same ship from New York to Europe in January 1962. The shipowner

moves to dismiss in each case on the basis of certain contractual provisions in the bill of lading which provide:

"1. This bill of lading shall have effect * * * for goods shipped from a United States port subject to the provisions of the Carriage of Goods by Sea Act of the United States, * * * which shall be deemed to be incorporated herein, * * * *Any dispute arising under this bill of lading shall be decided by the Hamburg courts*; if, however, the law applicable to the contract of carriage contained herein forbids such stipulation of jurisdiction the latter shall be considered overridden to the extent of such inconsistency but no further.

\* \* \* \* \* \*

"24. *This bill of lading contract shall be construed according to German law.*" (Emphasis added.)

In Case No. 1, it appears from the papers that libelant is an American corporation, and the consignee is a German enterprise (although it was originally contended that the latter was an American corporation).[2] The cargo was unloaded in Antwerp. Case No. 2 involves two shipments of cargo, and the libel is brought in both the names of the shippers (apparently American corporations) and the consignees, firms doing business in Germany. The cargo was discharged in Germany. One of the shipments was made FOB shipper's factory in the United States, and the other shipment was made for the account of the German consignee. In Case No. 3, libelant is an American corporation, the consignee is an enterprise doing business in Germany,[3] and the cargo was unloaded in Germany. In each case: the insurance proceeds for the damaged cargo or the proceeds of the salvage sale have been turned over to the applicable consignee;

---

1. The cases are General Motors Overseas Operation, Division of General Motors Corporation v. S.S. Goettingen, 62 Ad. 837 ("Case No. 1"); American & Foreign Trade Corp. v. S.S. Goettingen, 62 Ad. 422 ("Case No. 2"); and Henningsen Foods, Inc. v. S.S. Goettingen, 62 Ad. 668 ("Case No. 3").

2. Reply Affidavit and Exhibit of Michael J. Ryan.

3. Ibid.

the insurance surveys were conducted by German surveyors; and after the motion to dismiss was filed, a bond was posted to prevent the arrest of the ship. The ship is of German registry, owned by a German company, and manned by a German crew. The master is the only member of the crew still on board the vessel on her voyages between New York and Germany.

In all three cases, the shipowner moves to dismiss the libel because the parties have agreed through the bill of lading provisions to submit the dispute to a German court. The cargo interests advance several grounds in opposing the motions and in support of keeping the cases in this Court.[4] They claim that it would be unreasonable for this Court to decline jurisdiction in the interest of convenience and justice, that a court cannot decline jurisdiction of a suit brought *in rem* in a district in which the vessel is found, that one of the cases is ready for trial, that contract provisions which purport to oust a court of jurisdiction are void under New York law, that German law has not evolved a concept similar to our *in rem* suit, and that German law is more favorable to the carrier than the United States Carriage of Goods by Sea Act ("Cogsa"), 46 U.S.C. §§ 1300–1315.

A recent decision of this Court, involving cargo aboard the same ship on the same voyage, also raised the question of whether the Court should decline jurisdiction, Pakhuismeesteren, S. A. v. S. S. Goettingen, Dec. 16, 1963, 225 F.Supp.

888. The facts in Pakhuismeesteren are similar to the facts in the case before me, except that libelant there was a Belgian corporation, and the cargo was discharged in Antwerp. Judge McLean ruled in favor of declining jurisdiction, holding that the agreement of the parties to have the disputes determined by the German courts was reasonable.[5]

If the questions raised by the three motions before me were the same as those raised in Pakhuismeesteren, I would follow that case in the interest of sound administration of justice. However, these motions raise new issues. The most significant of these issues involves the substantive content of German law. German law, as well as Cogsa, 46 U.S.C. § 1304(2) (c), relieves the ship of liability for damage to cargo if caused by a peril of the sea. This principle was derived from the Hague rules, the model for Cogsa. Robert C. Herd & Co. v. Krawill Mach. Corp., 359 U.S. 297, 301, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). From the pleadings and papers, it is apparently undisputed that respondent, *inter alia*, relies on the "peril of the sea" exception in defending against the libels.

■ The interpretation of what is a "peril of the sea" apparently differs under German law from the usual interpretation in American law of the applicable section of Cogsa. According to the affidavit of an expert on German law submitted on the motions,[6] "a storm of a certain force is regarded as a peril of the sea. * * *" A recent German text,

4. Not all of the arguments are made by each cargo interest, but for purposes of convenience they are being considered together.

5. One of the reasons urged by libelant in Pakhuismeesteren against dismissal was that the action would be barred by the statute of limitations in Germany and, under German law, there could be no waiver of the statute of limitations. Judge McLean granted the motion to dismiss only on the condition that respondent agree to waive the statute of limitations in a new suit brought in this Court if the German court would not entertain the action on the ground that it was untimely. In the three cases before me, respond-

ent-shipowner has agreed to waive the German statute of limitations should libelants commence actions on such claims in Hamburg, Germany within six months from the date of an order of this Court declining jurisdiction. Respondent here has also agreed, in each case, to file a bond with the Hamburg court in the same amount as has already been filed in this Court, if libelant commences an action in Hamburg, Germany within the same six months' period.

6. Affidavit of Louis C. Bial, attached to Supplemental Memorandum of *Law in Opposition* to Respondent's Motion to Dismiss the Libel in Cases Nos. 1 and 3.

described as the leading work on German maritime law, states that the German law of what constitutes a peril of the sea differs from American law and that under German law, a peril of the sea does not have to be an extraordinary event. This text states that American law is different, citing R. T. Jones Lumber Co. v. Roen S. S. Co., 213 F.2d 370 (7 Cir. 1954); Diethelm & Co. v. S.S. Flying Trader, 1956 A.M.C. 1550 (S.D. N.Y.1956), aff'd 244 F.2d 542 (2 Cir. 1957), among others. The German text makes "clear that a storm of a certain force is regarded as a peril of the sea * * *." [7] American law, with its emphasis on unforeseeability, is criticized since it is said that such an interpretation of peril of the sea is too limited. The affidavit concludes with the statement that:

"It is clear from the foregoing that a storm which, under American law, would not free the carrier from liability, may be sufficient under German law to free the carrier from liability." [8]

Cogsa, 46 U.S.C. § 1312, provides in part:

"This chapter [Cogsa] shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade."

See also 46 U.S.C. § 1300. Since the cargo involved in the three libels in question was being shipped from New York, Cogsa applies.[9] Petition of Isbrandtsen Co., 201 F.2d 281, 285 (2 Cir. 1953); Gilmore and Black, Admiralty 113 (1957). Cogsa, 46 U.S.C. § 1303(8) also provides:

"Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect."

This section of Cogsa was designed to eliminate abuses by carriers in compelling shippers to agree to limitations of a carrier's liability.[10] The question is thus posed whether, on the facts of the instant case, the clause requiring construction of the bill of lading according to German law and in the German courts violates this provision of Cogsa by "relieving" or "lessening" the liability of the ship. The Supreme Court has not ruled on the validity of a clause in an ocean bill of lading which limits jurisdiction to the courts of a particular country. The Monrosa v. Carbon Black Export, Inc., 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959). However, the law in this Circuit is clear, although not without some criticism.[11] Such a

7. Id. at 3.

8. Id. at 5.

9. The bills of lading themselves (clause 1) also incorporate Cogsa.

10. In Caterpillar Overseas, S.A. v. S.S. Expeditor, 318 F.2d 720, 722 (2 Cir. 1963), the Court referred to the background of Cogsa and the Harter Act, which Cogsa "in large part" supplanted, as follows:

"During the Nineteenth Century shipowners sought to limit their stringent liabilities for loss or damage to cargo by inserting exculpatory clauses in their bills of lading. Some of these clauses exempted the carrier from liability for loss due to particularly-described perils and causes. Others went so far as to relieve the carrier from liability for the results of his own negligence. Because of the superior bargaining position of the carriers, shippers of goods were largely powerless to avoid the proliferation of these exceptions to liability, and bills of lading became contracts of adhesion forced upon shippers by carriers. See generally Gilmore & Black, The Law of Admiralty 119 et seq. (1957); Note, 27 Texas L.Rev. 525 (1949)."

11. Gilmore and Black, Admiralty 125 n. 23 (1957); Insurance Co. of No. Am. v. N. V. Stoomvaart-Maatschappij "Oostzee," 201 F.Supp. 76 (E.D.La.1961). For law review discussion see Ocean Bills of Lading and Some Problems of Conflict of Laws, 58 Colum.L.Rev. 213, 218–22 (1958); Enforcement and Effect of the Jurisdiction Clause in Admiralty, 34 St.

jurisdictional clause without more does not violate Cogsa, 46 U.S.C. § 1303(8). In Wm. H. Muller & Co. v. Swedish American Line, Ltd., 224 F.2d 806 (2 Cir.), cert. denied, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955), the Court of Appeals for this Circuit upheld a dismissal of a libel where it appeared that a clause limiting jurisdiction to the courts of Sweden was reasonable. The Court said (224 F.2d at 808):

> "[I]n each case the enforceability of such an agreement depends upon its reasonableness. * * * [T]he parties by agreement cannot oust a court of jurisdiction otherwise obtaining; notwithstanding the agreement, the court has jurisdiction. But if in the proper exercise of its jurisdiction, by a preliminary ruling the court finds that the agreement is not unreasonable in the setting of the particular case, it may properly decline jurisdiction and relegate a litigant to the forum to which he assented."

It is not clear from the opinion whether the Court believed that Swedish law would apply or that the Swedish courts would apply Cogsa in the Swedish limitation proceeding. The Court, however, emphasized the fact that (224 F.2d at 808):

> "There was an undisputed showing that Swedish courts apply the same measure of damages as American Maritime Courts and that limitation proceedings under Swedish law will be no more restrictive than under American law on libelant's recovery."

Only on this showing did the Circuit Court find it reasonable to decline jurisdiction in favor of a foreign court.

John's L.Rev. 72 (1959); Note, 25 Fordham L.Rev. 133 (1956); Note, 31 N.Y. U.L.Rev. 949 (1956).

12. Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co., 198 F.Supp. 284 (S.D.N.Y.1961) (no foreign tribunal involved); Archsum, 1962 A.M.C. 999 (D.

Respondent has cited other cases in urging this Court to decline jurisdiction. However, they all appear to be distinguishable becaue there was nothing to indicate that the foreign law applied in the foreign tribunal might "relieve" or "lessen" the liability of the carrier in contravention of Cogsa.[12] Thus, in Takemura & Co. v. The S.S. Tsuneshima Maru, 197 F.Supp. 909 (S.D.N.Y.1961), this Court recognized the principle that jurisdictional agreements will not be enforced by federal courts if found unreasonable "in their possible effect on the rights of the litigants." In declining jurisdiction in favor of the Japanese courts, the Court relied, in part, upon an opinion of a Japanese lawyer to the effect that the courts of his country could apply Cogsa. The Court specifically found that there had been (197 F.Supp. at 913):

> "no showing that the Japanese courts would not apply the same measure of damages, or that Japanese law would deny full effect to the provisions of the bill of lading or otherwise relieve the respondent-carrier from liability in contravention of the United States Carriage of Goods by Sea Act."

See also Murillo Ltda. v. The Bio Bio, The Paraguay, The Argentina, 127 F. Supp. 13, 16 (S.D.N.Y.), aff'd per curiam, 227 F.2d 519 (2 Cir. 1955).

Where it has appeared, however, that to decline jurisdiction and remit the parties to a foreign court, albeit one named by contractual agreement, would have great effect on their substantive rights, the United States court will retain jurisdiction. In Chemical Carriers, Inc. v. L. Smit & Co's Internationale Sleepdienst, 154 F.Supp. 886 (S.D.N.Y.1957) libelant

Ga.1961); Aetna Ins. Co. v. The Satrustegui, 171 F.Supp. 33 (D.P.R.), modified, 174 F.Supp. 934 (D.P.R.1959); Nieto v. The S.S. Tinnum, 170 F.Supp. 295, 297 (S.D.N.Y.1958); see also Cerro De Pasco Copper Corp. v. Knut Knutsen, O.A.S., 187 F.2d 990 (2 Cir. 1951).

claimed a share of a salvage award. That right, in turn, depended upon an agreement, which contained a clause that the agreement was subject to the law of the Netherlands, and all disputes were to be exclusively submitted to a court in Rotterdam. Judge Bryan of this Court refused to decline jurisdiction where it appeared that Dutch law was contrary to United States law and that "the practical result of compelling libelant to litigate in the Rotterdam courts might well be to deprive it of all remedy. Such a result would not be in accord with the theory of salvage in this country, * * *." 154 F.Supp. at 889. Although this case did not involve Cogsa, the rationale of the decision is clear. Parties will not be remitted to a foreign tribunal, despite an agreement, if substantive rights would be substantially affected.[13]

■■ Upon the papers and affidavits submitted upon this motion, it appears without real contradiction [14] that German law on perils of the sea is different from the interpretation given the perils of the sea exception of Cogsa by United States courts, and there is no indication that the court in Hamburg under these circumstances would apply the latter. Differing interpretations of the same exception, on the facts of these cases, reflect a substantial difference in favor of the ship between German law and Cogsa. When a specific statutory command (§ 1303(8) of Cogsa) concededly applicable to the bill of lading is likely to be violated,[15] jurisdiction should not be declined. To do so would be unreasonable, in light of public policy as expressed in Cogsa. This ruling is, of course, not inconsistent with the Muller test of reasonableness, although application of the test in this case leads to a different result. In

Muller, the Court clearly pointed out that the foreign law would be "no more restrictive" than United States law on the shipper's rights.

Under this view of the case, it is unnecessary to deal with the other reasons urged by libelants for denying the motions to dismiss and continuing the jurisdiction of this Court. Submit decree in accordance with this opinion.

13. See also Flota Maritima Browning De Cuba v. The Ciudad De La Habana, 181 F.Supp. 301, 311 (D.Md.1961).

14. Respondent did not submit any evidence of what German law is in this respect or what law the courts of Hamburg would apply. It is merely claimed that libelant's contention of German law is only "mere

supposition." Reply Memorandum of Law in Support of Claimant-Respondent's Motion in Cases Nos. 1 and 3.

15. "If the foreign law is less favorable to the shipper than Cogsa, then his rights are 'lessened' in violation of section 3(8) of Cogsa. * * *" Gilmore and Black, Admiralty 125 n. 23.