July 18, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2179

VIMAR SEGUROS Y REASEGUROS, S.A.,

Plaintiffs, Appellants,

v.

M/V SKY REEFER, HER ENGINES, ETC.,
AND M.H. MARITIMA, S.A.,

Defendants, Appellees.

ERRATA SHEET

The opinion of this court issued on July 7, 1994, is amended

as follows:

On page 8, first full paragraph, line 1: Replace "Moveover"

with "Moreover."

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 93-2179

VIMAR SEGUROS Y REASEGUROS, S.A.,

Plaintiffs, Appellants,

v.

M/V SKY REEFER, HER ENGINES, ETC.,

AND M.H. MARITIMA, S.A.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Breyer*, Chief Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Stanley McDermott, III with whom Sharyn Bernstein, Varet & Fink,

P.C., Alexander Peltz, and Peltz Walker & Dubinsky were on brief for

appellants.

John J. Finn with whom Thomas H. Walsh, Jr., Jeffrey S. King, and

Bingham, Dana & Gould were on brief for appellees.

July 7, 1994

*Chief Judge Stephen Breyer heard oral argument in this matter but did

not participate in the drafting or the issuance of the panel's

opinion. The remaining two panelists therefore issue this opinion

pursuant to 28 U.S.C. 46(d).

BOWNES, Senior Circuit Judge. This appeal asks us
BOWNES, Senior Circuit Judge.

to decide whether a foreign arbitration clause in a maritime

bill of lading governed by the Carriage of Goods at Sea Act,

46 U.S.C. 1300 et seq. (COGSA), is invalid under that

statute, or whether such a clause is enforceable under the

Federal Arbitration Act, 9 U.S.C. 1 et seq. (FAA). We

conclude that the FAA controls, and that the arbitration

clause is valid. Accordingly, the order of the district

court staying this action pending arbitration in Tokyo is

affirmed.

I.

BACKGROUND

Plaintiff-appellant Bacchus Associates is a

wholesale fruit distributor in the Northeast United States.

Bacchus was the owner of a shipment of oranges travelling

from Agadir, Morocco to New Bedford, Massachusetts, in

February 1991 aboard the SKY REEFER,1 a vessel owned by M.H.

Maritima, S.A. Maritima had time-chartered the vessel to

Honma Senpaku Co., Ltd., who in turn time-chartered it to

Nichiro Corp. Bacchus entered into a voyage charter with

Nichiro for the February 1991 voyage.

1. The subrogated underwriter of the oranges, Vimar Seguros
Y Reaseguros, is also a plaintiff-appellant in this action.
Hereafter, references to Bacchus include Vimar where
applicable.

-2-
2

The oranges were shipped under a bill of lading

issued in Morocco by Nichiro. The bill of lading constitutes

the contract of carriage between Bacchus and Maritima. En

route to New Bedford, numerous boxes of oranges were crushed.

Bacchus filed an action in the United States District Court

for the District of Massachusetts, in rem against the SKY

REEFER, and in personam against Maritima, seeking to recover

approximately $1 million in damages.

Maritima moved to stay the action and compel

arbitration in Tokyo pursuant to a clause in the bill of

lading:

Governing Law and Arbitration
(1) The contract evidenced by or
contained in this Bill of Lading shall be
governed by Japanese Law.

(2) Any dispute arising from this Bill of
Lading shall be referred to arbitration
in Tokyo by the Tokyo Maritime
Arbitration Commission (TOMAC) at the
Japan Shipping Exchange, Inc., in
accordance with the Rules of TOMAC and
any agreement thereto, and the award
given by the arbitrators shall be final
and binding on both parties.

The district court held that the arbitration clause contained

in subsection (2) was enforceable, granted Maritima's motion

for a stay pending arbitration, and certified the following

question for interlocutory appeal pursuant to 28 U.S.C.

1292(b): "[W]hether 46 U.S.C. 1303(8) [ 3(8) of COGSA]

nullifies an arbitration clause contained in a bill of lading

-3-
3

governed by COGSA." With this question in mind, we begin our

journey through unsettled statutory waters.

II.

DISCUSSION

COGSA was passed in 1936 as the American enactment

of the Hague Rules, and was part of an international effort

to achieve uniformity and simplicity in bills of lading used

in foreign trade. Union Ins. Soc'y of Canton, Ltd. v. S.S.

Elikon, 642 F.2d 721, 723 (4th Cir. 1981). COGSA was also

intended to reduce uncertainty concerning the

responsibilities and liabilities of carriers,

responsibilities and rights of shippers, and liabilities of

insurers. State Establishment for Agric. Prod. Trading v.

M/V Wesermunde, 838 F.2d 1576, 1580 (11th Cir.), cert.

denied, 488 U.S. 916 (1988) ("Wesermunde"); S.S. Elikon, 642

F.2d at 723; see generally Grant Gilmore & Charles L. Black,

The Law of Admiralty 3-25 at 145 (2d ed. 1975).

COGSA applies to "[e]very bill of lading . . .

which is evidence of a contract for the carriage of goods by

sea to or from parts of the United States, in foreign trade .

. . . " 46 U.S.C. 1300. The parties agree that the bill

of lading at issue here is covered by COGSA ex proprio

vigore, in other words, as a matter of law. The bill of

lading also contains the following provision:

-4-
4

Local Law
In case this Bill of Lading covers the
Goods moving to or from the U.S.A. and it
shall be adjudged that the Japanese Law
does not govern this Bill of Lading, then
the provisions of the U.S. Carriage of
Goods at Sea Act 1936 shall govern before
the Goods are loaded on and after they
are discharged from the vessel and
throughout the entire time during which
the Goods are in the actual custody of
the carrier.

Bacchus argues that the Tokyo arbitration clause is invalid

under 3(8) of COGSA which prohibits the "lessening" of the

carrier's obligation as imposed by COGSA's other sections.2

In Indussa Corp. v. S.S. Ranborg, 377 F.2d 200 (2d

Cir. 1967) (en banc), the Second Circuit held that all

foreign forum selection clauses in bills of lading governed

by COGSA are necessarily invalid under 3(8) because they

tend to lessen the carrier's liability. Id. at 204. The

court reasoned as follows:

From a practical standpoint, to require
an American plaintiff to assert his claim
only in a distant court lessens the

2. This provision provides as follows:

Any clause, covenant or agreement in a
contract of carriage relieving the
carrier or the ship from liability for
loss or damage to or in connection with
the goods, arising from negligence,
fault, or failure in the duties or
obligations provided in this section, or
lessening such liability otherwise than
as provided in this Act, shall be null
and void and of no effect.

46 U.S.C. 1303(8).

-5-
5

liability of the carrier quite
substantially, particularly when the
claim is small. Such a clause puts "a
high hurdle" in the way of enforcing
liability, and thus is an effective means
for carriers to secure settlements lower
than if cargo [sic] could sue in a
convenient forum.

Id. at 203.3 Moreover, "[a] clause making a claim triable

only in a foreign court would almost certainly lessen

liability if the law which the court would apply was not

[COGSA]." Id. Furthermore,

[e]ven when the foreign court would apply
[COGSA], requiring trial abroad might

lessen the carrier's liability since
there could be no assurance that it would
apply [COGSA] in the same way as would an
American tribunal subject to the uniform
control of the Supreme Court . . . . We
think that Congress meant to invalidate
any contractual provision in a bill of
lading for a shipment to or from the
United States that would prevent cargo
[sic] able to obtain jurisdiction over a
carrier in an American court from having
that court entertain the suit and apply
the substantive rules Congress had
prescribed.

3. The court also concluded that COGSA, wherever it governs
a bill of lading, requires application of American law.
Indussa, 377 F.2d at 203; see generally Thomas J. Schoenbaum,

Admiralty & Maritime Law 9-18 at 326-27 (Pra. ed. 1987).

Bacchus contends that the Japanese choice-of-law clause in
its bill of lading, in addition to the arbitration clause, is
null and void under 3(8) of COGSA, and, alternatively, that
the "Local Law" clause in the bill of lading requires that
COGSA, and not Japanese law, governs, because COGSA applies
ex proprio vigore. Although both of these arguments appear

to be substantial, only the validity of the arbitration
clause is at issue on this interlocutory appeal. In light of
our holding, the choice-of-law question must be decided, in
the first instance, by an arbitrator.

-6-
6

Id. at 203-04 (emphasis in original) (citations omitted)

(footnote omitted).

Since Indussa, 3(8) has been consistently used by

federal courts to invalidate forum selection clauses in bills

of lading governed by COGSA. See, e.g., Conklin & Garrett,

Ltd. v. M/V Finnrose, 826 F.2d 1441, 1442-44 (5th Cir. 1987)

(forum selection clause designating Finland invalid even

where bill of lading provided for application of COGSA in

Finland); Union Soc'y of Canton, Ltd., 642 F.2d at 723-25

(choice of forum clause requiring litigation in Germany

invalid under 3(8)); cf. Fireman's Fund Amer. Ins. Cos. v.

Puerto Rican Forwarding Co., 492 F.2d 1294 (1st Cir. 1974)

(distinguishing Indussa and upholding New York City forum

selection clause). Indussa has also been approved by

commentators. See Gilmore & Black, supra 3-25 at 145-46

n.23; Schoenbaum, supra 9-18 at 327; Charles L. Black, The

Bremen, COGSA and the Problem of Conflicting Interpretation,

6 Vand. J. Trans. L. 365, 368-69 (1973). But see Note,

Kenneth M. Klemm, Forum Selection in Maritime Bills of Lading

Under COGSA, 12 Fordham Int'l L.J. 459 (1989); Stephen M.

Denning, Choice of Forum Clauses in Bills of Lading, 2 J.

Mar. L. & Com. 17 (Oct. 1970).

While we need not fully explore the issue, we note

that the Supreme Court's recent decision in Carnival Cruise

Lines, Inc. v. Shute, 499 U.S. 585 (1991), in which the Court

-7-
7

held that the Limitation of Vessel Owners' Liability Act did

not invalidate forum selection agreements, casts some doubt

upon Indussa's continuing viability. See Fabrica De Tejidos

La Bellota S.A. v. M/V Mar, 799 F. Supp. 546, 560-61 (D.

Virgin Islands 1992); see also Patrick J. Borchers, Forum

Selection Agreements in the Federal Courts After Carnival

Cruise: A Proposal for Congressional Reform, 67 Wash. L.

Rev. 55, 77 (1992) (Carnival Cruise implicitly overruled

Indussa and its progeny). But see Underwriters at Lloyd's of

London v. M/V Steir, 773 F. Supp. 523, 526-27 (D.P.R. 1991)

(invalidating forum selection clause under 3(8) of COGSA,

holding that Indussa survives Carnival Cruise).

Moreover, in Fireman's Fund we questioned whether

Indussa even survived the Supreme Court's decision in The

Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). In The

Bremen, the Supreme Court enforced a foreign forum selection

clause in a maritime contract not covered by COGSA. In doing

so, the Court focused on whether the clause was

"unreasonable" under the circumstances. The Bremen, 407 U.S.

at 10. We remarked as follows:

Although the Supreme Court has
acknowledged the Indussa decision and has

not formally rejected it, see The Bremen

v. Zapata Off-Shore Co., 407 U.S. 1, 10

n.11, 92 S.Ct. 1907, 32 L.Ed.2d 513
(1972), several passages in the Bremen
opinion cast some doubt on the underlying
rationale of Indussa. See, e.g., 407

U.S. at 9, 92 S.Ct. at 1912 ("The
expansion of American business and

-8-
8

industry will hardly be encouraged if,
notwithstanding solemn contracts, we
insist on a parochial concept that all
disputes must be resolved under our laws
and in our courts.") . . . .

Fireman's Fund, 492 F.2d at 1296 n.2. Because The Bremen is

not a COGSA case, however, it is easily distinguishable from

Indussa and its progeny. See S.S. Elikon, 642 F.2d at 724-25

(holding that The Bremen did not involve COGSA and therefore

did not disturb Indussa).

Notwithstanding the arguably tremulous ground on

which Indussa and its progeny currently sit, we will assume,

arguendo, that, for the reasons set forth in Indussa, foreign

forum selection clauses are invalid under 3(8) of COGSA.

The other statute implicated in this case is the

FAA. Section 2 of that act provides:

A written provision in any maritime
transaction . . . to settle by
arbitration a controversy thereafter
arising out of such contract . . . shall
be valid, irrevocable, and enforceable,
save upon such grounds as exist at law or
in equity for the revocation of any
contract.

9 U.S.C. 2. "[B]ills of lading of water carriers" are

explicitly included as "maritime transactions" under the

statute. 9 U.S.C. 1. Furthermore, the FAA requires a

federal district court, on the application of one of the

parties, to stay litigation and grant an order compelling

arbitration of any issue referable to arbitration under the

agreement. Id. 3, 4.

-9-
9

Where there is an agreement to arbitrate, the FAA

reflects a strong, well-established, and widely recognized

federal policy in favor of arbitration. Shearson/American

Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987);

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473

U.S. 614, 625 (1985); Securities Indus. Ass'n v. Connolly,

883 F.2d 1114, 1118-19 (1st Cir. 1989), cert. denied, 495

U.S. 956 (1990). Arbitration agreements are unenforceable

under 2 of the FAA only where the agreement would be

revocable under state contract law. Southland Corp. v.

Keating, 465 U.S. 1, 11 (1984) (party may assert general

contract defenses, such as fraud and duress, to avoid

enforcement of arbitration agreement); McAllister Bros., Inc.

v. A & S Transp. Corp., 621 F.2d 519, 524 (2d Cir. 1980)

(same).4

Although this court has never decided whether a

foreign arbitration clause in a bill of lading governed by

COGSA is invalid under 3(8) of that statute, courts that

4. Bacchus argued below that the bill of lading was a
contract of adhesion, and that the arbitration clause was
therefore unenforceable. This defense was rejected by the
district court, and that ruling is not before us on the
present appeal. We recognize, however, that maritime bills
of lading have been viewed as contracts of adhesion. See,

e.g., Organes Enters., Inc. v. M/V Khalij Frost, 1989 A.M.C.

1460, 1465-66 (S.D.N.Y. 1989); Pacific Lumber & Shipping Co.

v. Star Shipping A/S, 464 F. Supp. 1314, 1315 (W.D. Wash.

1979). Accordingly, if the adhesion issue had been a subject
of this interlocutory appeal, it would warrant close
scrutiny.

-10-
10

have reached the question are divided. A handful of courts,

including the Eleventh Circuit, have employed the reasoning

articulated in Indussa to invalidate foreign arbitration

clauses. See, e.g., Wesermunde, 838 F.2d at 1580-82; M/V

Khalij Frost, 1989 A.M.C. at 1462-66; Siderius v. M.V. Ida

Prima, 613 F. Supp. 916, 920-21 (S.D.N.Y. 1985); Star

Shipping A/S, 464 F. Supp. at 1314-15; see also Gilmore &

Black, supra, 3-25 at 146 n.23; Schoenbaum, supra 9-19 at

329.

In Wesermunde, the Eleventh Circuit declined to

enforce a foreign arbitration agreement contained in a bill

of lading governed by COGSA. Relying on Indussa, the court

explained as follows:

While we do not believe that arbitration
in and of itself is per se violative of

COGSA's provisions, especially in light
of Congress' encouragement of arbitration
by its enactment of the Arbitration Act,
9 U.S.C. 1-14 (1970) the court does
believe that a provision requiring
arbitration in a foreign country that has

no connection with either the performance
of the bill of lading contract or the
making of the bill of lading contract is
a provision that would conflict with
COGSA's general purpose of not allowing
carriers to lessen their risk of
liability.

Wesermunde, 838 F.2d at 1581 (footnote omitted). Some courts

have gone one step further, holding that foreign arbitration

clauses in bills of lading are per se invalid under COGSA

because "[t]he considerations [stated in Indussa] are

-11-
11

substantially similar where the bill of lading requires the

consignee to arbitrate in a foreign country." Siderius, 613

F. Supp. at 920; accord Khalij Frost, 1989 A.M.C. at 1462

(Indussa rationale "appl[ies] with equal force in the case of

a foreign arbitration clause in a bill of lading").

On the other side of the coin, numerous federal

courts have upheld foreign arbitration clauses in bills of

lading subject to COGSA. See, e.g., Nissho Iwai Amer. Corp.

v. M/V Sea Bridge, 1991 A.M.C. 2070 (D. Md. 1991); Citrus

Mktg. Bd. v. M/V Ecuadorian Reefer, 754 F. Supp. 229 (D.

Mass. 1990); Travelers Indem., Co. v. M/V Mediterranean Star,

1988 A.M.C. 2483 (S.D.N.Y. 1988); Mid South Feeds, Inc. v.

M/V Aqua Marine, 1988 A.M.C. 437 (S.D. Ga. 1986); Midland Tar

Distillers, Inc. v. M/T Lotos, 362 F. Supp. 1311, 1315

(S.D.N.Y. 1973); Mitsubishi Shoji Kaisha Ltd. v. MS Galini,

323 F. Supp. 79, 83-84 (S.D. Tex. 1971); Kurt Orban Co. v.

S/S Clymenia, 318 F. Supp. 1387, 1390 (S.D.N.Y. 1970).

We join those courts upholding the validity of

foreign arbitration clauses in bills of lading subject to

COGSA. In reaching this result, we are guided by our belief

that the FAA alone governs the validity of arbitration

clauses, both foreign and domestic, and consequently removes

them from the grasp of COGSA.5

5. We recognize, however, that absent the FAA, COGSA might
operate to nullify foreign arbitration clauses in bills of
lading.

-12-
12

We begin with two canons of statutory

interpretation. First, a later enacted statute generally

limits the scope of an earlier statute if the two laws

conflict. Davis v. United States, 716 F.2d 418, 428 (7th

Cir. 1983); Tennessee Gas Pipeline Co. v. Federal Energy

Regulatory Comm'n, 626 F.2d 1020, 1022 (D.C. Cir. 1980);

Indussa, 377 F.2d at 204 n.4;6 see generally 2B Norman J.

6. Footnote four of Indussa states:

Our ruling does not touch the question of
arbitration clauses in bills of lading
which require this to be held abroad.
The validity of such a clause in a
charter party, or in a bill of lading
effectively incorporating such a clause
in a charter party, have been frequently
sustained. Although the Federal
Arbitration Act adopted in 1925 validated
a written arbitration provision "in any
maritime transaction," 2, and defined
that phrase to include "bills of lading
of water carriers," 1. COGSA, enacted
in 1936, made no reference to that form
of procedure. If there be any

inconsistency between the two acts,

presumably the Arbitration Act would

prevail by virtue of its reenactment as

positive law in 1947.

Indussa, 377 F.2d at 204 n.4 (citations omitted) (emphasis

added). Although a later Second Circuit opinion sought to
narrow the scope of this dictum, see Aaacon Auto Transp. Co.

v. State Farm Mut. Auto Ins. Co., 537 F.2d 648, 655 (2d Cir.

1976) (explaining that footnote four of Indussa was concerned

"primarily . . . upon those commercial situations in which
the economic strength and bargaining power of the parties is
roughly equal"), courts have continued to rely on footnote
four in enforcing foreign arbitration clauses in bills of
lading governed by COGSA. See Fakieh Poultry Farms v. M/V

Mulheim, No. 85 Civ. 26577, slip op. at 2 (S.D.N.Y. Oct. 24,

1986); M/V Mediterranean Star, 1988 A.M.C. at 2484-85; see

also Kaystone Chem., Inc. v. Bow-Sun, 1989 A.M.C. 2976, 2981-

-13-
13

Singer, Sutherland Statutory Construction 51.03 at 141 (5th

ed. 1992). Second, where two statutes conflict, regardless

of the priority of enactment, the specific statute ordinarily

controls the general. See Watson v. Fraternal Order of

Eagles, 915 F.2d 235, 240 (6th Cir. 1990); see generally 2B

Sutherland Statutory Construction, 51.05 at 174.

With respect to the former canon, the FAA must be

given priority over COGSA in light of the FAA's reenactment

in 1947, eleven years after COGSA was passed. Similarly, the

latter canon suggests that the FAA be given effect. Section

3(8) of COGSA, which voids any clause in a bill of lading

that "lessens" the carrier's liability, makes no reference to

arbitration, or for that matter, forum selection clauses.7

Conversely, the FAA specifically validates arbitration

clauses contained in maritime bills of lading. See 9 U.S.C.

1, 2.

82 (S.D.N.Y. 1989) (stating that Indussa footnote "probably"

requires enforcement of foreign arbitration clause in COGSA
bill of lading). But see Siderius, 613 F. Supp. at 920-21

(holding Aaacon substantially undercuts scope of the Indussa

footnote); Khalij Frost, 1989 A.M.C. at 1463-64 (same).

While we agree with the rule of statutory construction
expressed in the footnote, we take no position on the effect
of Aaacon on that note.

7. In fact, up until Indussa, the Second Circuit regularly

enforced foreign forum selection clauses in bills of lading
governed by COGSA. See, e.g., William H. Muller & Co. v.

Swedish Amer. Line Ltd., 224 F.2d 806 (2d Cir.), cert.

denied, 350 U.S. 903 (1955); Cerro de Pasco Copper Corp. v.

Knut Knutsen, O.A.S., 187 F.2d 990 (2d Cir. 1951).

-14-
14

Next, and perhaps of paramount importance, we

believe that the strong federal policy favoring arbitration

supports the primacy of the FAA over COGSA where arbitration

agreements are concerned. See Ecuadorian Reefer, 754 F.

Supp. at 233-34. The existence of this policy distinguishes

the present case from foreign choice-of-forum cases because

in those cases "there was no compelling congressional mandate

in favor of giving effect to agreements to litigate before

foreign tribunals." MS Galini, 323 F. Supp. at 83.

Furthermore, American courts' mistrust of foreign

courts, a driving force in the Indussa court's decision to

invalidate foreign choice-of-forum clauses, is an

inappropriate consideration in the context of arbitration.

See Mitsubishi Motors, 473 U.S. at 626-27 (We are "well past

the time when judicial suspicion of . . . arbitration and of

the competence of arbitral tribunals inhibited the

development of arbitration as an alternative means of dispute

resolution."); Connolly, 883 F.2d at 1119 ("[C]ourts must be

on guard for artifices in which the ancient suspicion of

arbitration might reappear."). Finally, unlike a foreign

forum selection clause, an agreement to arbitrate does not

deprive a federal court of its jurisdiction over the

underlying dispute. S/S Clymenia, 318 F. Supp. at 1390; MS

Galini, 323 F. Supp. at 83.

-15-
15

For the foregoing reasons, the order of the

district court is Affirmed.
Affirmed.

-16-
16