**C.A. SEGUROS ORINOCO, Plaintiff,**

**v.**

**NAVIERA TRANSPAPEL, C.A., Seguros La Seguridad C.A. and the M/V ROSAMILA, her engines, tackle, apparel, furniture and equipment, etc., Defendants.**

**Civ. No. 86–242 HL.**

United States District Court, D. Puerto Rico.

Jan. 20, 1988.

**676**

Antonio M. Bird, San Juan, P.R., for plaintiff.

José F. Sárraga, Naviera Transpapel, C.A., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

On February 20, 1985 codefendant *in rem* the vessel M/V Rosamila left the Port of San Juan, Puerto Rico bound for the Port of Guaranao, Venezuela. The cargo aboard the vessel included 1,554 bundles of waste cardboard boxes and cuttings, which had been sold to C.A. Venezolana de Pulpa y Papel by Papiro, Inc. Four bills of lading had been issued in San Juan earlier that day by codefendant Naviera Transpapel, C.A., a common carrier and owner and operator of the M/V Rosamila, consigning the cargo to C.A. Venezolana de Pulpa y Papel. The following day, about 23 hours out of port, the crew was forced to aban-

don ship due to fire. The waste cardboard bundles were destroyed. The consignee, C.A. Venezolana de Pulpa y Papel, was duly reimbursed for the loss by its insurer, plaintiff C.A. Seguros Orinoco, which subrogated to the rights of the insured and instituted the present action against the ship *in rem*, the carrier ("Naviera Transpapel") and the carrier's insurer, Seguros La Seguridad, C.A.

Two motions to dismiss filed by defendants are pending resolution. Codefendant insurer, La Seguridad, moves for dismissal for plaintiff's failure to comply with the relevant statute of limitations. Codefendants the vessel and the carrier move for dismissal based on the doctrine of *forum non conveniens.*

## STATUTE OF LIMITATIONS

Plaintiff's complaint is exceedingly broad. It contains no statement of the grounds upon which the Court's jurisdiction depends, as required by F.R.C.P. 8(a). Nevertheless, mindful of the court's duty to liberally construe all notice pleadings so as to do substantial justice, we hereby find that admiralty jurisdiction attaches through the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. sect. 1300 *et seq.*

COGSA applies because sect. 1300 provides that:

> Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.

The complaint does happen to mention the four bills of lading issued by Naviera Transpapel upon receipt of the waste cardboard cargo into Naviera's charge at San Juan, Puerto Rico, the port of embarkation. As Puerto Rico may be considered a port of the United States, COGSA applies to the instant action by the statute's own terms, whether or not it is incorporated in the bills of lading. *Commercio Transito Internazionale, Ltd. v. Lykes Bros. Steamship Co.,* 243 F.2d 683 (2nd Cir.1957).

Sections 1303 and 1304 of COGSA enumerate the responsibilities, liabilities, rights, and immunities of the carrier and ship in the case of loss or damage to cargo, and are applicable in this action. Section 1303(6) sets the following time limitation:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

It is undisputed that the Rosamila should have delivered the cargo by February 25, 1985 at the latest. The complaint was filed against the Rosamila and Naviera Transpapel, the vessel and carrier, on February 21, 1986, just within the one year prescription period. On June 3, 1986, more than year after the Rosamila should have debarked, plaintiff amended the complaint to include La Seguridad, the insurer of both the ship and carrier.

Codefendant La Seguridad argues that the claim against it is a direct action under the Puerto Rico Insurance Code, sect. 20.-010 and 20.030, 26 L.P.R.A. sects. 2001 and 2003 [1] and is, in turn, time barred by the

---

1. Sect. 2001. Liability insurer's liability absolute

The insurer issuing a policy insuring any person against loss or damage through legal liability for the bodily injury, death, or damage to property of a third person, shall become absolutely liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer to the extent of its liability therefore under the policy shall not depend upon payment by the insured of or upon any final judgment against him arising out of such occurrence.

Sect. 2003. Suits against insured, insurer

(1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy, which action he may exercise against the insurer only or against the insurer and the insured jointly. The direct action against the insurer may only be exercised in Puerto Rico. The liability of the insurer shall not exceed that provided for in the policy, and the court shall determine, not only the liability of the insurer, but also the amount of the loss. Any action brought under this section shall be subject to the conditions of the policy or contract and to the defenses that may be pleaded by the insurer to the direct action instituted by the insured.

(2) If the plaintiff in such action brings suit against the insured alone, such shall not be

one-year prescription period of COGSA. La Seguridad further argues that the amendment of the complaint does not relate back in time under F.R.C.P. 15(c) to the date of the filing of the original complaint. Plaintiff counters by disputing La Seguridad's characterization of the direct action as arising under COGSA, and refers to sect. 20.030(2) of the direct action statute as proof that its claim is not time-barred.

■ The parties agree that plaintiff's cause of action against La Seguridad is provided by Puerto Rico's direct action statute. Strictly construed, plaintiff is correct in asserting it is not a cargo claim under COGSA, but is a separate cause of action against the insurer. *Ruiz Rodriguez v. Litton Indus. Leasing Corp.,* 574 F.2d 44, 45 (1st Cir.1978). The direct action statute does not, however, contain a provision for a separate statute of limitations. Not illogically, it has been held that "[s]ince both actions, that which is brought against the insured as well as the one which is filed against the insurance company, have the same origin and since both depend on the same evidence, there is no justification to establish different periods of prescription." *Ruiz Millan v. Maryland Casualty Co.,* 101 D.P.R. 249, 251 (1973). The period of limitation of the direct action against defendant La Seguridad is, then, the same one year encountered in the underlying cause of action, sect. 1306 of COGSA.

The case of *Rogatz v. Hospital General San Carlos,* 89 F.R.D. 298 (D.P.R.1980) is directly analogous to the case at bar. In *Rogatz,* plaintiff filed an action for personal injuries against the Hospital on July 5, 1979. The injury had occurred on August 14, 1978. Puerto Rico has a one year statute of limitations for personal injury actions. The original complaint was thus timely. On August 23, 1979, more than one year after the accident, an amended complaint was filed adding the Hospital's

insurance company as a codefendant under 26 L.P.R.A. sect. 2001. The District Court found, citing *Ruiz Millan,* that the one year limitation period for the underlying personal injury action applied to the direct action as well, and had run. The filing of the original complaint did not toll the direct action against the insurance company. For the direct action to remain, the amended complaint would have to meet the standards for relation back to the original complaint. *See also, Santiago–Rivera v. Royal Ins. Co. of Puerto Rico,* 613 F.Supp. 121 (D.C.P.R.1985).

Plaintiff attempts to avoid this framework by invoking sect. 20.030(2) of the Insurance Code. As provided in footnote 1, *ante,* subsection (2) preserves a plaintiff's right to subrogate to the rights of the insured to recover from the insurer under the policy *after* securing final judgment against the insured. This subsection contemplates a plaintiff obtaining a judgment for money damages against an insured, but, for whatever reasons, such as the insured's inability to pay combined with an insurance company's refusal to cover the judgment under the policy, or for just mere facility, the plaintiff seeks to collect those money damages from the insurance company. This would be a subrogation action on the policy contract, as opposed to a direct action on the damage-incurring occurrence. Subsection (2) is not part of the direct action proper; it merely preserves a common subrogation action in the face of the most uncommon direct action provided for in subsection (1).[2] Plaintiff may not use it as a basis for bringing an otherwise time-barred action against an insurance company until after the issuance of a final judgment against an insured. *Ramos v. Continental Insurance Company,* 493 F.2d 329, 333 (1st Cir.1974).

Plaintiff relies on *Barrientos v. Gobierno De La Capital,* 97 P.R.R. 539 (1969), *cert. denied,* 400 U.S. 866, 91 S.Ct. 103, 27

---

deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured.

**2.** Puerto Rico and Louisiana are the only two jurisdictions in the United States which have direct action statutes.

L.Ed.2d 104 (1970) for the proposition that complaints may be amended at any time to include an insurance company as a defendant, *even* after securing final judgment against an insured. The *Barrientos* opinion does appear on its facts to allow an amendment adding an insurer as defendant more than a year after the occurrence of the damages. Curiously, it also allows without analysis an action against the insured which was filed more than one year after the occurrence of the damages. After 23 pages of close analysis of various issues, the *Barrientos* court allowed the late amendment adding the insurance company with this terse pronouncement:

 With respect to the defense of prescription of American Surety Co., it suffices to refer to sect. 20.030(2) of the Insurance Code, 26 L.P.R.A. sect. 2003, which recognizes plaintiff's right to bring suit against the insurer even after securing final judgment against the insured. This means that in the case at bar the cause of action against American Surety Co. is still on time, although more than ten years have elapsed since the complaint was amended to join it as defendant.

97 P.R.R. at 562.

These two bare sentences coming at the end of a long, at times confusing opinion are not persuasive enough to warrant disregard of the subsequently and contrarily decided cases previously mentioned (*Ruiz Millan, Santiago–Rivera, Rogatz*).

 The Court is therefore duty bound to apply F.R.C.P. 15(c) to determine if the amendment relates back to the original complaint. For a claim included later by amendment to relate back, (1) the claim must arise out of the same occurrence as the claims in the original complaint, (2) the new party must have received such notice of the institution of the action before the limitations period ended that it will not be prejudiced in its defense, and, (3) the new party knew or should have known that, but for a mistake identifying the proper party, the action would have been brought against the new party. F.R.C.P. 15(c);

*Serrano v. Torres,* 764 F.2d 47, 49 (1st Cir.1985).

As in *Rogatz,* requirements (2) and (3) have not been met in this case. There is no evidence of La Seguridad receiving actual or constructive notice of the original action. The original complaint was not filed against an "unknown insurance company" or the wrong insurance company. There is no identity of interest between La Seguridad and the other defendants such that notice may be inferred.

The direct action against La Seguridad must be dismissed as being time-barred.

## FORUM SELECTION

Codefendants Naviera Transpapel, C.A. and the M/V ROSAMILA, shipowner and ship *in rem*, respectively, move for summary judgment on the basis of *forum non conveniens.* They further argue that a forum selection clause contained in the bills of lading should be given effect. Plaintiff counters by relying on *Indussa v. SS Ranborg,* 377 F.2d 200 (2nd Cir.1967) for the proposition that forum selection clauses are *per se* invalid under COGSA. Plaintiff does not explicitly address the *forum non conveniens* issue, though the consultation opinions of two practicing Venezuela attorneys, submitted as exhibits, make reference to some of the factors involved with the issue. Defendants have also provided the Court with opinions from legal experts in Venezuela.

The bills of lading evidencing the contract of carriage between the shipper and codefendant carrier were issued in San Juan, Puerto Rico on February 20, 1985. Clause 23 of the bill provides:

JURISDICTION: The Tribunals of the Republic of Venezuela, in the City of Caracas, have jurisdiction to entertain all types of claims, conflicts, or disagreements between the parties.

This is hardly a strict, unambiguous forum selection clause. It does not state that the parties have agreed to adjudicate their differences in Venezuela. It does not state that the courts of Venezuela have exclusive jurisdiction over claims arising from the bill of lading. It merely states the undisputed fact that the courts of Venezuela

have jurisdiction. The clause does not preclude concurrent jurisdiction, which as it happens in this case, may exist in the United States under COGSA.

Of course it may be argued under basic rules of contract construction that the jurisdiction clause cannot have so superfluous a meaning. The courts of Venezuela probably have jurisdiction of the action by virtue of both parties' Venezuelan citizenship and the intended port of debarkation in Venezuela, notwithstanding any provision in the bill of lading. The addition of the jurisdiction clause would be rendered redundant if merely stated the obvious, that Venezuelan courts do have jurisdiction. Therefore, taken in the context of the entire transaction clause 23 vests Venezuelan courts with exclusive jurisdiction.

Against this syllogism it may be quickly noted that the bill of lading is a form contract issued by the Venezuelan carrier for use with all shippers. Jurisdiction may very well not automatically attach when the shipper is not Venezuelan and neither the port of loading nor unloading is in Venezuela. In such a circumstance clause 23 would serve the independent purpose of conferring jurisdiction on Venezuelan courts. Nevertheless, as we are not equipped to interpret the bill of lading in regard to Venezuelan jurisdiction, suffice to say that the clause conferring jurisdiction is by no means as definitely exclusive as it could be.

Somewhat less open to cavil is the choice of law provision in the form bill of lading. Clause 1 provides:

All of the terms, stipulations and conditions of the rules contained in the International Convention for the Unification of Certain Rules in the Matter of Bills of Lading, Brussels, of August 25, 1924 shall apply to the contract concerning this bill of lading, but if in the country where the cargo was loaded or unloaded a special law has been promulgated for the purpose of incorporating the rules of the said Convention, in consequence thereof, all the terms, conditions and stipulations of said Convention, with all of its modifications and amendments, if any, shall be applicable as imposed by said special law.

The carrier shall have all of the privileges, rights and immunities which are conferred by the Convention, or any other modification or amendment forming an integred part of the same. If any clause should be deemed null or void in accordance with the aforementioned convention or any other modification or amendment thereto, it shall be null and void to the extent of said invalidation, but no more.

While COGSA is not mentioned by name, it clearly falls within the category of "special law promulgated for the purpose of incorporating the rules of [the Brussels] Convention ... in the country where the cargo was loaded," as shall be discussed presently. The Venezuelan courts should apply COGSA, then, if they give effect to the contents of the bill of lading. Though one of plaintiff's experts on Venezuelan maritime law opines that Venezuelan courts would not apply COGSA because it is not expressly mentioned in the bill of lading, he never considered clause 1. The expert focused instead on the fact that Venezuela was not a signatory to the Brussels Convention and has not incorporated its rules. Though, again, the Court is not equipped to interpret Venezuelan law as applied in Venezuelan courts, it does seem that defendant's position that the bill of lading incorporates COGSA by virtue of clause 1 is the better reasoned.

What we are equipped to do, however, is interpret the forum selection clause as it affects the jurisdiction of this Court. The task entails delving into a bit of historical background, and analyzing the leading and subsequent cases in this area in relation to the facts of this case.

For sometime before the passage of COGSA in 1936 the laws governing liability for damage to cargo shipped overseas to and from foreign ports varied in the extreme.[3] The general maritime law had pro-

---

**3.** The following historical overview is based on Gilmore and Black, *The Law of Admiralty,* 2nd Ed. 1957, sect. 3–22—3–24 and *Encyclopaedia*

vided for almost absolute liability of ship-owners for cargo damage. The shipper merely had to prove that he delivered the goods to the carrier in good condition and that they were damaged upon receipt. When bills of lading came into general use, carriers, naturally seeking to limit liability, exercised their dominant bargaining power by stocking their bills of lading full of exceptions to liability for damage to cargo. United States courts, traditionally among the most "pro-cargo" in the world, reacted by establishing the concept of "overriding obligations," flowing from the warranty of seaworthiness, the breach of which, if a "promoting cause" of loss, would supersede minutely detailed exceptions in the bill of lading. United States courts also invalidated on public policy grounds more general exceptions such as those which purported to free carriers from liability for loss regardless of negligence. British courts, in support of their dominant merchant marine, tended to uphold these general "negligence" exceptions. It thus became a matter of crucial importance the forum in which a dispute was adjudicated.

In 1893 Congress enacted the Harter Act, 27 Stat. 445 (1893), 46 U.S.C. sect. 190–196, as a statutory compromise between the two competing interests. Negligence clauses were prohibited, but a shipowner's liability was limited to the seaworthiness standard, excluding errors in navigation or management by the crew. The compromise worked so well that representatives of the shipping world met and promulgated the Hague Rules in 1921, amended in 1924 by the Brussels Convention, which embodied the Harter Act compromise. In 1936 Congress enacted COGSA, a nearly verbatim copy of the Hague Rules, in implementation of the Convention. The purpose of the Hague Rules, and COGSA, was to establish uniform standards for bills of lading to govern the rights and responsibilities of shippers and carriers engaged in oceangoing international trade.

The standard in COGSA prohibiting certain kinds of provisions in bills of lading including negligence exceptions appears at

46 U.S.C. sect. 1303(8) and provides in pertinent part:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

This section may be succinctly summarized as voiding any clause in the bill of lading which "lessens the liability" of the ship or carrier. Plaintiff in this case argues that honoring the forum selection in the bill of lading would lessen the liability of codefendants ship and carrier because there is no guarantee that Venezuelan courts would apply cargo-favorable COGSA, or if they did apply it, would apply it in the same manner and with the same result or recovery.

Despite the wide dissemination of the Hague Rules, carriers are still attempting, as evidenced by the instant bills of lading and defendant's argument in this case, to avoid the application of COGSA in United States courts. Despite the fact that COGSA is almost identical with the Hague Rules, there must remain a lingering notion that cargo interests are best served under COGSA in United States courts. Carriers continue to put clauses in their bills of lading selecting a forum different from the United States. It is undisputed that COGSA confers jurisdiction on all cargo shipped to or from ports of the United States. The question is whether a forum selection clause should be given effect to oust the United States of its clear statutory jurisdiction.

The answer to this question was apparently yes at first. In *William H. Muller and Co. v. Swedish American Line, Ltd.*, 224 F.2d 806, 808 (2nd Cir.1955), *cert. denied* 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955), the Second Circuit decided that a forum selection clause in a bill of lading should be given effect as long as it is not

*Britannica, Inc. v. SS Hong Kong Producer*, 422 F.2d 7, 11–13 (2nd Cir.1969).

"unreasonable in the setting of the particular case." Though COGSA applied, the court approved the forum selection and the law application of Sweden, which applied the Hague Rules. The decision was not applauded or followed in all quarters. *See* Gilmore and Black, at sect. 3–25, n. 23. The Fifth Circuit in *Carbon Black Export v. The SS Monrosa*, 254 F.2d 297 (5th Cir. 1958) relied upon the time honored maritime *in rem/in personam* distinction to decide *contra. Muller* was an action *in personam. Carbon Black* was an *in rem* action against the ship and the forum selection provision could be read as pertaining only to *in personam* actions. The clause was voided as to the action against the *Monrosa.*

Any possible ambiguity occasioned by the *in rem/in personam* distinction was laid to rest by the decision in the leading case of *Indussa Corporation v. SS Ranborg*, 377 F.2d 200 (2nd Cir.1967). Though the action was only *in rem*, the Second Circuit sitting en banc expressly overruled the holding of *Muller.* A clause in the bill of lading providing that any dispute be decided in the country where the carrier had its principal place of business (Norway) was void under sect. 3(8) of COGSA.

From a practical standpoint, to require an American plaintiff to assert his claim only in a distant court lessens the liability of the carrier quite substantially, particularly when the claim is small. Such a clause puts a "high hurdle" in the way of enforcing liability, Gilmore & Black, *supra*, 125 n. 23, and thus is an effective means for carriers to secure settlements lower than if cargo could sue in a convenient forum. See Note, Enforcement and Effect of the Jurisdiction Clause in Admiralty, 34 St. Johns L.Rev. 72, 78 (1959). A clause making a claim triable only in a foreign court would almost certainly lessen liability if the law which the court would apply was neither the Carriage of Goods by Sea Act nor the Hague Rules. Even when the foreign court would apply one or the other of these regimes, requiring trial abroad *might* lessen the carrier's liability since there could be no assurance that it would

apply them in the same way as would an American tribunal subject to the uniform control of the Supreme Court, and sect. 3(8) can well be read as covering a potential and not simply a demonstrable lessening of liability. See Note, *supra*, 34 St. Johns L.Rev. 79–80. We think that Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed.

*Indussa*, at 203–204.

■ The holding cannot be clearer. Where COGSA applies by its own terms, that is where there is a shipment to or from a U.S. port, forum selection clauses may not oust U.S. courts from jurisdiction. This is not to say that other tribunals may not also have jurisdiction. The court expressly stated that it "need not here determine whether, and if so, under what circumstances the doctrine of *forum non conveniens* could apply to an action on a bill of lading subject to COGSA" because the burden was clearly not met in that case. *Indussa*, at 204.

Despite the seemingly unambiguous and broad language of the holding in *Indussa*, courts have hinted at the possibility of limiting it to the "special factors in *Indussa*." *See Firemen's Fund American Insurance Companies v. Puerto Rican Forwarding Co., Inc.*, 492 F.2d 1294, 1296 (1st Cir.1974). The impetus for such contemplated limitation no doubt springs from the opinion by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 499, 1972 A.M.C. 1407 (1972). While acknowledging that COGSA was not applicable to the facts in the case before it, the Court through Chief Justice Burger launched a broad attack on United States courts' historical unwillingness to favor forum selection clauses. "[I]n light of present-day commercial realities and expanding international trade" blanket rejection of a "freely negotiated private international agreement" to litigate in a particular

foreign forum "reflects something of a provincial attitude regarding the fairness of other tribunals" and does not comport with the laws of the majority of nations engaged in international trade. Harking back to *Muller*, the Court broadly held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 92 S.Ct. at 1913–16.

The "special factors" present in *Indussa* that could possibly limit its reach are evident in the excerpted quotation. The court in *Indussa* was concerned that requiring an "American plaintiff to assert his claim only in a distant court lessens the liability of the carrier quite substantially, particularly when the claim is small." *Indussa*, 277 F.2d at 203. The idea is that since it would not be worth the added expense to litigate over a small amount in dispute in another country, meritorious claims will be chilled and, consequently, cargo interests will suffer. The claim there was for $2,600. In this case the claim is not small, $205,000. Furthermore, both parties are foreign, indeed both are Venezuelan. Defendant argues that under these circumstances there is no " 'high hurdle' in the way of enforcing liability." *Ibid*.

Though *Indussa* does contain some conditional language, it also reads very broadly in parts. "We think that Congress meant to invalidate any contractual provision in a bill of lading for a shipment to or from the United States that would prevent cargo able to obtain jurisdiction over a carrier in an American court from having that court entertain the suit and apply the substantive rules Congress had prescribed." Defendants have cited no case and we have found none wherein a court has seen fit to interpret a clause in a bill of lading, covered by COGSA by its terms, as divesting United States courts of jurisdic-

tion.[4] To the contrary, courts have refused to relinquish jurisdiction, even when both parties are foreign. *See Union Ins. Soc. of Canton, Ltd. v. SS Elikon*, 642 F.2d 721 (4th Cir.1981); *Mitsui & Co. v. M/V Glory River*, 464 F.Supp. 1004 (W.D.Wash.1978) (both parties and forum selected were Japanese). *See also, Northern Assurance Co. v. M/V Caspian Career*, 1977 AMC 421 (N.D.Cal.1977) and *M.G. Chemical Corp. v. M/V Sun Castor*, 1978 AMC 1756 (D.Alas. 1977) (citizenship of the parties not considered or indicated in either case).

Further support for deciding in accordance with precedent can be found in the bills of lading at issue. They are forms. They are nothing like the "freely negotiated private international agreements" contemplated in *Bremen*. The choice of forum was in no way bargained for. Moreover, as discussed *ante*, the choice of forum is hardly unequivocable. Finally, though the better position is that Venezuelan courts would apply COGSA as provided for in the bill of lading, *Indussa* makes it clear that shippers have a right to pursue their COGSA claims in United States courts, as there are no assurances that a foreign court would apply COGSA in the same manner as a United States court.

The somewhat ambiguous bill of lading, combined with the caselaw's unanimously uncompromising view of the broadest COGSA jurisdiction possible, dooms defendant's motion for summary judgment based on forum selection. This obtains despite the fact that both parties are Venezuelan and there appear to be no actual "high hurdles" lessening carrier liability.

While we refrain from declaring that once COGSA jurisdiction attaches on account of a shipment of cargo into or out of the United States any forum selection clauses appearing in the bill of lading sought to be enforced by a carrier is null and void, under the circumstances of this

---

4. In *Firemen's Fund Ins. Co., supra*, a forum selection clause was honored which designated a specific American venue, different from the American venue chosen by plaintiff. In *Roach v. Hapag-Lloyd, A.G.*, 358 F.Supp. 481 (N.D.Cal. 1973) the reverse of the usual alignment of claims occurred when the carrier filed a third

party complaint against the shipper in a longshoreman's personal injury suit. As COGSA was explicitly designed to protect cargo interests by not lessening the liability of the carrier, the shipper could reap the benefits of the forum selection clause.

case the forum selection clause is ruled null and void.

## FORUM NON CONVENIENS

This determination does not dispose of defendant's motion to dismiss, however. It will be remembered that *Indussa* expressly left open the possibility that though jurisdiction may not be forfeited by operation of a forum selection clause, the court may, in its discretion, refuse jurisdiction on convenience grounds. *See also, SS Elikon, supra,* (forum selection defense defeated, case remanded for development of facts related to doctrine of *forum non conveniens* ). In this case, defendant has moved alternatively on the grounds of *forum non conveniens* and the record is almost developed enough to decide this issue at this time.

The Rosamila, a Venezuelan flag vessel, left San Juan on February 20, 1985 transporting, among other things, the waste cardboard that is the subject of this suit. The cardboard had been sold by the shipper, Papiro, Inc., a Puerto Rican corporation, to C.A. Venezolana de Pulpa y Papel, a Venezuelan corporation, which was to receive it in Guaranao, Venezuela. The owner and operator of the Rosamila is Naviera Transpapel, C.A., a common carrier and Venezuelan corporation. All crew members of the Rosamila are Venezuelan, save one Italian oiler. Four bills of lading covering the waste cardboard were issued in San Juan, C. & F. Guaranao, by the carrier, Naviera Transpapel, to the shipper, Papiro, Inc. The cardboard was delivered to Naviera Transpapel for shipment in good order and condition. Naviera Transpapel avers that the shipment was made pursuant to an ongoing commercial transportation agreement between it and consignee C.A. Venezolana de Pulpa y Papel, but the contract Naviera Transpapel submits as evidence of the agreement is dated November 4, 1986, after the shipment at issue.

On February 21, 1985, en route between San Juan and Guaranao, the crew of the *M/V Rosamila* was forced to abandon ship due to fire. As a result, the waste cardboard was lost. It was not delivered to the consignee, C.A. Venezolana de Pulpa y Pa-pel. Thereupon, the consignee filed a claim with its insurer, C.A. Seguros Orinoco, a Venezuelan corporation, for compensation under the policy for its loss. C.A. Seguros Orinoco paid the claim and subrogated to the consignee's rights, and brought the instant suit.

In this case, all parties are Venezuelan. That is, the consignee's insurer, the ship, and the carrier. The consignee is also Venezuelan. The shipper, who sold the waste cardboard to the consignee and delivered it to the carrier, is Puerto Rican.

Under the doctrine of *forum non conveniens* a district court may decline to exercise jurisdiction when an adequate alternate forum is available. The seminal case of *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 9 L.Ed. 1055 (1947) sets out guidelines for determining whether a forum is convenient which are fully applicable to cases in admiralty. *Alcoa Steamship Co. v. M/V Nordic Regent,* 453 F.Supp. 10 (S.D.N.Y.1978), *aff'd,* 654 F.2d 165 (2nd Cir.1978), *on rehearing, en banc,* 654 F.2d 147 (2d Cir.1978), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). A plaintiff's choice of forum will not ordinarily be disturbed "unless the balance is strongly in favor of defendant." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. The burden is less heavy, however, where as here all parties are foreign citizens. "A foreign plaintiff's choice deserves less deference." *Piper Aircraft v. Reyno,* 454 U.S. 235, 236, 102 S.Ct. 252, 256, 70 L.Ed.2d 419, 1982 AMC 214 (1981). "In a suit in admiralty between foreigners it is ordinarily within the discretion of the District Court to refuse to retain jurisdiction, and . . . the exercise of its discretion will not be disturbed unless abused." *Canada Malting Co. v. Paterson Steamships,* 285 U.S. 413, 418, 52 S.Ct. 413, 414, 76 L.Ed. 837, 1932 AMC 512 (1938).

A prerequisite to weighing the convenience of a forum is that an alternative, adequate forum exists. *Tramp Oil and Marine, Ltd. v. M/V Mermaid I,* 743 F.2d 48 (1st Cir.1984). Next to be considered is the private interests of the litigant.

Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.

*Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. Public interest considerations, including the local interest in having the controversy resolved in plaintiff's choice of the local forum, must also be weighed. *Piper Aircraft,* 454 U.S. at 260, 102 S.Ct. at 268. Finally, in direct contrast to our analysis of forum selection clauses under COGSA, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Id.* at 247, 102 S.Ct. at 261.

■ Application of the foregoing factors leads the Court to conclude, in exercise of its discretion, that but for the lack of a few vital pieces of evidence, this case would be dismissed on *forum non conveniens* grounds contingent upon the fulfillment by defendants of certain conditions set forth below.

First, the Court notes the by now obvious, that a competent alternative forum with jurisdiction exists, namely Venezuela. In regard to the private interests of the litigants, there is, however, some sharp disputation. There is no dispute that the fire that resulted in the destruction of the cargo broke out on the high seas between San Juan and Venezuela. Defendants aver that the vessel M/V Rosamila was lost in international waters. Plaintiffs refrain from admitting this fact for lack of knowledge. Indeed the complaint names the vessel *in rem* as a defendant. If it is true that the vessel was lost, then the factor of access to the ship, or to surveys taken of the ship to determine the cause of the fire, is eliminated. The other major consideration is of witnesses and compulsory process. As plaintiffs will be trying to prove that the fire was caused by the actual fault or privity of Naviera Transpapel (COGSA sect. 4(2)(d), assuming COGSA is applied), the most important witnesses will undoubtedly be the crew members of the M/V Rosamila. All but one crew member are Venezuelans. Considerations of convenience and personal jurisdiction militate for the Venezuelan forum over the American. Though there is some dispute about this, Venezuelan courts appear to possess institutional procedures for compelling the attendance of witnesses. Regardless, compelling the attendance of the crew members to this United States forum would be problematic at best. Even if compulsion were not necessary to secure attendance, the expenses incurred in transporting witnesses would be much greater to the United States forum. Likewise, defendant avers that all officers of Naviera Transpapel are Venezuelan residents and that drydock repairs were conducted on the vessel in Venezuela by Venezuelan residents two months before the fire. Plaintiff again refuses to admit these allegations of fact for lack of knowledge. Submission of documentary evidence by Naviera Transpapel to prove the unsupported factual allegations noted in this paragraph would resolve in favor of the courts of Venezuela the factors of convenience of access to proof and witnesses.

Defendant's final argument in this regard is that the inability to implead potential third party defendants would severely prejudice them. As it argued concerning these parties as witnesses, defendant maintains that such potential third party defendants as those responsible for the M/V Rosamila's repair, maintenance, equipment, and inspection are all Venezuelan residents. Though defendant has submitted no proof of these allegations about the vessel's locus of repair, etc. at this early stage of litigation, plaintiff has not objected to the argument that potential third party defendants reside in Venezuela, beyond the denial of drydock repairs for lack of knowledge.

The case of *C.A. La Seguridad v. Transytur,* 707 F.2d 1304, 1983 AMC 2559 (11th

Cir.1983) contains facts very similar to the one at bar. Plaintiff was the subrogee of the consignee of a shipment of goods from Miami to Venezuela. Defendant was the carrier. Both parties were Venezuelan corporations, as was the crew of the vessel. The cargo was loaded in good condition in Miami, but was damaged upon receipt by the consignee. The Court of Appeals reversed as premature the District Court's dismissal based on *forum non conveniens*. Neither party had yet delineated its claim or framed the issues. It had not been determined where or how the damage to the cargo had been occasioned. As such, it could not be determined which forum would be more convenient for proving the nascent theories of damage. The court would "not foreclose a dismissal on *forum non conveniens* grounds once the issues have been clearly delineated." *Id.*, 1983 AMC at 2567.

In this case, by contrast, there is no dispute about the situs of the damage-causing incident. The ship caught fire and the cargo was destroyed en route between San Juan and Venezuela. If the fire had started while loading in San Juan or unloading in Venezuela the balance of the source of proof factor would be tipped toward the ship's location when the fire began. *See Ghana Textile v. Oti River*, 1980 AMC 1620 (S.D.N.Y.1980) (COGSA action between Ghanian parties dismissed on convenience grounds where fire destroying cargo started in Ghanaian unloading port).

As it stands, the location of the damage-causing incident is neutral as between the two possible forums. Other private interest factors favor the Venezuelan forum—many witnesses' (crew) and all parties' residencies. Still other private interest factors—the status and present location of the Rosamila, the residencies or locations of witnesses or reports concerning the repair of the Rosamila, the residencies of possible third party defendants—cannot be properly evaluated at this time without more proof. Plaintiff's argument that dismissal of the claim against the Rosamila and Naviera Transpapel result in piecemeal litigation in that the direct action claim against the insurer may only be brought in

Puerto Rico, Section 20.030 of the Insurance Code, 26 L.P.R.A. sect. 2003, is mooted by the Court's determination, *supra,* that the direct action is time-barred.

The other interest which must be considered is the public. There is "a local interest in having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 509, 67 S.Ct. at 843. This case does not represent a localized controversy. The only local connection is that the waste cardboard was sold by a Puerto Rican corporation, which also shipped it off the Island. Upon issuance of a clean bill of lading for the goods, and once the vessel departed San Juan without mishap, the local connection was severed. From that point the relationship with Venezuela was highlighted.

The only possible interest that Puerto Rico and/or the United States would have in this litigation is the same pro-cargo interest protected by COGSA and previously discussed. The United States, as the world's largest importing and exporting nation, has always had a great interest in assuring the ready seaborne transportation of cargo to and from its shores. This interest has been fomented and protected by strict laws providing for compensation to cargo interests for damaged cargo. COGSA is the main vehicle of that protection. In that capacity, COGSA has been interpreted to invalidate forum selection clauses purporting to *divest* U.S. courts of jurisdiction in bills of lading covered by it. To extend that protection to *require* U.S. courts to accept jurisdiction of all cases covered by COGSA would constitute overreaching, would result in inconvenience, inefficiency, and waste of judicial resources, and would contravene the admonition in *Indussa* and other cases that the doctrine of *forum non conveniens* operates in full force when a claim is brought under COGSA.

## CONCLUSION

Defendants Naviera Transpapel and the M/V Rosamila have not quite shown that this case should be dismissed on conve-

nience grounds. Crucial pieces of proof, as designated *ante*, are lacking. Without this proof the Court is not inclined at this time to find that Venezuela is a significantly more convenient forum than Puerto Rico for resolving this case.

Should defendants come forward with the proof needed to support their motion for dismissal, the Court would condition dismissal on defendants' compliance with the following three conditions:

1. Defendants shall submit to the jurisdiction of the courts of Venezuela.

2. Defendants will waive any statute of limitations defense possibly incurred as a result of this litigation in this Court.

3. Defendants are to file a surety bond to guarantee any judgment, plus interest and costs, that may be obtained by plaintiff relative to this matter.

WHEREFORE, codefendant Seguros La Seguridad's motion to dismiss is hereby GRANTED.

Codefendants Naviera Transpapel and M/V Rosamila's motion to dismiss is hereby DENIED.

IT IS SO ORDERED.