The **TRAVELERS INDEMNITY COMPANY, Plaintiff,**

v.

**S/S ALCA, her engines, boilers, tackle, etc., Maritima Astor S.A., Sociedad de Gestion de Buques S.A., D.B. Deniz Nakliyati T.A.S., (Turkish Cargo Lines) Zueste & Bachmeier A.G., Zust Bachmeier of Switzerland Inc., Defendants.**

**No. 87 Civ. 2041 (JMW).**

United States District Court, S.D. New York.

April 7, 1989.

Harold M. Kingsley, New York City, for plaintiff.

Pavia & Harcourt, New York City, for defendants Zuests & Bachmeier, A.G. and Zust Bachmeier of Switzerland, Inc.

Michael E. Schoeman, Meryl S. Justin, Schoman, Marsh, Updike & West, New York City, for defendant D.B. Deniz Makiyati, T.A.S., The Turkish Cargo Lines.

Thomas H. Healey, New York City, for M/V Alca, Maritima Astor S.A., and Sociedad de Gestion de Buques S.A.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Plaintiff Travelers Indemnity Company, a Connecticut based corporation, initiates two causes of action in this case on behalf of its insureds Al Haddad Enterprise Inc. and Telmar International, Inc. The first cause of action is brought under the Court's admiralty and maritime jurisdiction for negligence and breach of contract against defendants M/V Alca (sued herein as the S/S Alca), its owners and maritime company, and the Turkish Cargo Lines as a result of damage done to a cargo of corn oil that was shipped from New Orleans, Louisiana to Mersin, Turkey, aboard the M/V Alca.

The second cause of action is based on diversity jurisdiction and alleges negligence against a Swiss corporation, Zueste & Bachmeier A.G. ("Zueste") and its New York affiliate, Zust Bachmeier of Switzerland Inc. ("Zust Inc.") in the repacking and shipment of the corn oil from Turkey to Iraq.

Defendants in both causes of actions move to dismiss this case on grounds of forum non conveniens. Since the balance of convenience in weighing both public and private interests favors an alternate forum, the motion is granted.

### I. *Background*

In an effort to ship corn oil from New Orleans to Mersin, Turkey, Turkish Cargo Lines, a Turkish corporation having offices in Istanbul,[1] time chartered the vessel M/V Alca, a Spanish registered carrier owned by defendants Maritima Astur S.A. and Sociedad de Gestion de Buques, S.A., from Great American Shipping and Trading, S.A. of Panama. Turkish Cargo lines employed two shippers in this venture, Al Haddad Enterprise, Inc. and Telmar International, Inc., based in Nashville, Tennessee, and a consignee, Sengeller Forwarding and Trading Co., Inc. of Mersin Turkey ("Sengel-

ler"). The bills of lading for the shipments contained a forum selection clause that required any dispute arising from the shipment of these goods to be decided in the courts of Turkey applying Turkish laws.

Prior to departure from New Orleans, clean bills of lading were issued for the cargoes of corn oil. In late November, 1986, defendant Turkish Cargo Lines received the cargoes of corn oil in Mersin, Turkey, however some of the goods were damaged. The cause of the damage is unclear. The damage may have occurred from a combination of negligent loading in New Orleans and rough seas or, since the cargo was given a clean bill of lading at the point of departure, the actual damage may have occurred on the high seas.

While in Mersin, Sengeller took possession of the goods to investigate damages and report on losses. Other Turkish maritime surveyors assisted in this project and prepared two reports that detailed damages to the cargo. Turkish surveyors submitted these reports to two Turkish judicial tribunals—the Commercial Court of First Instance and the Magistrate's Court—in an effort to resolve a dispute between Sengeller, the Turkish consignee, and Turkish Cargo Lines.

Although the parties agreed that corrective work on the goods would be performed at a cost of $45,000, they now disagree as to who exactly was to perform the work. Plaintiff asserts that defendants Zueste and Zust, Inc. were hired to sort, repack and rebox the cargo for shipment to Iraq. Zueste is a Swiss corporation and Zust Inc., is its New York affiliate doing business as a freight forwarder. However, Zueste and Zust Inc., asserts that it served as mere agent of Sengeller, the Turkish consignee, and that it was actually Sengeller that was hired to repack the goods.

Zueste and Zust, Inc. have joined the other defendants in moving to dismiss this action on grounds of forum non conveniens. Defendants assert that the Turkish Courts provide the most adequate and con-

---

1. Although Turkish Cargo Lines does not have a New York office, it is represented in New York through a general agent, Johnson Maritime Services, Inc.

venient forum to resolve this dispute since the critical mass of evidence, witnesses, and interests are in Turkey. For the reasons stated below, defendants' motion to dismiss is granted.

## II. *Discussion*

Plaintiff relies on two arguments in its opposition to defendants' motion to dismiss. First, plaintiff argues that transfer of this case is barred by the U.S. Carriage of Goods by Sea Act ("COGSA") 46 U.S.C. App. § 1300 *et seq.*, as applied by the Second Circuit's holding in *Indussa v. Ranborg*, 377 F.2d 200 (2d Cir.1967). Second, plaintiff contends that the balance of convenience in the forum non conveniens inquiry does not favor an alternate forum. Both arguments are without merit.

### A. Application of COGSA and Indussa

■ Plaintiff's complaint does not base this Court's jurisdiction on COGSA. Nevertheless, plaintiff asserts that COGSA applies since this case involves the carriage of cargo from a United States port to a foreign port. Section 1300 of COGSA provides:

> every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.

Consistent with this provision, the Second Circuit held in *Indussa v. Ranborg* that "COGSA invalidates any contractual provision in the bills of lading for shipment to or from United States that would prevent cargo able to obtain jurisdiction over a carrier in American courts from having that court entertain suit and apply the substantive rules congress had prescribed." 377 F.2d at 204. Since there was a forum selection clause in this case that required disputes to be solely heard in Turkey, plaintiff contends that under § 1300, as applied in *Indussa,* this action is barred from a transfer

to an alternate forum. This argument is misplaced.

COGSA and *Indussa* are of limited applicability for several reasons. First, defendants have not attempted to dismiss, as in *Indussa,* for lack of jurisdiction based on a forum selection clause in the bills of lading. In *Indussa,* plaintiff brought a libel action *in rem* alleging that a shipment arrived in San Francisco in damaged condition. The vessel's owners moved for an order declining jurisdiction because of the Jurisdiction clause in the bills of lading. *Indussa,* 377 F.2d at 201. Defendants in the case at bar, however, have not attempted to enforce the forum selection clause in the bills of lading. Instead defendant's motion to dismiss is based exclusively on the grounds of forum non conveniens.

Second, the Court of Appeals for the Second Circuit in *Indussa* expressly left open the question of whether a federal court may decline jurisdiction on grounds of convenience while refusing to enforce a forum selection clause. The court explicitly stated: "We need not here determine whether and, if so, under what circumstances the doctrine of forum non conveniens could apply to an action on a bill of lading subject to COGSA ..." *Indussa,* 377 F.2d at 204. *See also, Union Insurance Society of Canton Limited v. S.S. Elikon,* 642 F.2d 721, 725 (4th Cir.1981).[2]

■ Third, the possibility of a different application of substantive law in an alternate forum does not deter this court from granting defendant's forum non conveniens motion. The Supreme Court in *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), addressed this issue and held that, "the possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry." *Id.* at 247, 102 S.Ct. at 261. Since jurisdiction and venue requirements are often easily satisfied, plaintiffs can and often do select that forum whose choice-of-

---

**2.** Although the Fourth Circuit stated that COGSA "appears to suggest a preference for an American forum" *Elikon,* 642 F.2d at 726, the court as in *Indussa,* expressly reserved opinion on the forum non conveniens issue. *Id.* at 725. It

stated for guidance on remand that the district court should consider the factors outlined in *Gulf Oil Corp. v. Gilbert* when considering the forum non conveniens doctrine.

law is most advantageous.[3] Thus, to give substantial weight to the possibility of an unfavorable change in substantive law, as plaintiff urges, would undermine the very flexible nature of the forum non conveniens doctrine. *Id.* at 250, 102 S.Ct. at 263.

Finally, claims brought under COGSA are typical of many admiralty cases since they involve the carriage of goods by sea to or from U.S. ports in foreign trade. There is no authority for creating a general exception to the forum non conveniens doctrine simply because the case involves the admiralty and maritime jurisdiction of the court. *Alcoa Steamship Company, Inc. v. M/V Nordic Regent*, 654 F.2d 147, 153 (2d Cir.1980) (en banc), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). On the contrary, due to admiralty's equitable nature [4] and the absence of the usual venue requirements,[5] courts exercising admiralty powers have frequently declined to exercise their jurisdiction. *Gilbert*, 330 U.S. at 514, 67 S.Ct. at 846 (Black, J., dissenting) [6]; *Canada Malting Co. v. Paterson S.S. Co.*, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932). In fact, "it is in the field of admiralty that our federal courts have applied the doctrine of forum non conveniens most flexibly and over the longest period of time." *Alcoa Steamship*, 654 F.2d at 153, *citing* Bickel, *The Doctrine of Forum Non Conveniens as Applied in the Federal Courts in Matters of Admiralty*, 35 Corn.L.Q. 12 (1949).

Based upon the above considerations, the Court finds that COGSA does not present a bar to the application of forum non conveniens in this case. The Court thus turns to the merits of petitioner's forum non conveniens considerations.

## B. The Balance of Conveniences

The ultimate inquiry in a forum non conveniens analysis is where the place of trial will best serve the convenience of the parties and the ends of justice. *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). Because the factors relevant to that inquiry are case specific, district courts have great discretion in applying the doctrine of forum non conveniens. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266–67, 70 L.Ed.2d 419. To guide district court discretion, the Supreme Court has set forth a balancing test that weighs both "private interest factors" affecting the convenience of the litigants, and "public interest factors" affecting the convenience of the forum. *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843–844, 91 L.Ed. 1055 (1947).

The factors pertaining to the private interests of the litigants include: the "relative ease of access to sources of proof; availability of compulsory process for attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S., at 508, 67 S.Ct. at 843. The public factors include: the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest of having the trial of a case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the

---

**3.** Indeed, the plaintiff in this case has chosen New York to be its forum. The Southern District may not necessarily be the most advantageous forum. Notably, plaintiff did not select Connecticut (plaintiff's site of incorporation) or New Orleans, Louisiana (site of the alleged negligent loading of the cargo) or Tennessee (site of the insureds' incorporation).

**4.** *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 513–14, 67 S.Ct. at 845–46.

**5.** In maritime cases, the transitory nature of the security available to the libelant was thought to

justify the application of the *forum rei sitae* doctrine. Bickel, *supra* at 45–46.

**6.** Justice Black dissented in the *Gilbert* case and did not believe that a district court should decline jurisdiction simply because a defendant exhibits a more convenient and less vexatious forum. *Gilbert*, 330 U.S. at 513, 67 S.Ct. at 845. However, he agreed that an exception existed for courts in equity or courts in admiralty since they had peculiar problems that justified the declining of jurisdiction. *Id.* at 514, 67 S.Ct. at 845–46.

unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 509, 67 S.Ct. at 843. In this case both private and public interest factors point toward dismissal of the action.

The private interest factors favor an alternate forum because the overwhelming number of documents, witnesses, and access to sources of proof are located in Turkey. The relative ease of access to sources of proof affect the balance of determining the private factors in a forum non conveniens inquiry. *Ocean Shelf Trading Inc. v. Flota Mercante Gran Colombiana S.A.,* 638 F.Supp. 249 (S.D.N.Y. 1986); *See also, Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 966–967 (2d Cir.1980). Most evidence pertaining to the central issue in this case—the damage to the cargo of corn oil—is in Turkey. Official Turkish inspectors, appointed by the Turkish tribunals, examined the damaged goods in Turkey and prepared inspection reports or protocols. These reports and the testimony of their authors are vital to the resolution of the dispute as they ascertain the extent of the damage to the shipment of the corn oil. Access to such sources of proof favor a Turkish forum.

In addition, the inability to reach Sengeller, by compulsory process, favors dismissal of the action. The need to implead other parties is an interest relevant to the forum non conveniens determination. *Gilbert,* 330 U.S. at 511, 67 S.Ct. at 844; *Perusahaan Umum Listrik Negara v. M/V Tel Aviv,* 711 F.2d 1231, 1240 (5th Cir.1983); *Ocean Shelf, supra.* Sengeller, a Turkish consignee to the bill of lading, is not a party to this action and thus is beyond the compulsory process of this Court. Yet defendant Zueste and Zust Inc. claim that Sengeller was responsible for the repackaging of the cargo. If this is so, Sengeller's testimony regarding plaintiff's second cause of action against Zueste and Zust Inc. could be pivotal in resolving this dispute. However, if this case is tried in New York, the parties may be unable to ascertain Sengeller's testimony concerning the repackaging and salvage value of the cargo.

Even if all witnesses were willing to testify in New York, translation from Turkish to English would be needed for not only the key witnesses, but also for documents and protocols. The costs of such translations are relevant to the forum non conveniens inquiry. *Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2d Cir.1978). Additionally, the expense of bringing the witnesses and documents to New York and providing for their translations may be prohibitive. Therefore, the private interest factors, viewed together, favor dismissal of this action.

The public interest factors also favor dismissal because New York has little interest in this controversy. Generally, local controversies should be tried close to home. *See, Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843. None of the parties here are New York residents. Plaintiff is a Connecticut corporation and its insureds are based in Tennessee. Defendants are foreign corporations with interests predominately in either Turkey or Switzerland. None of the crucial events took place in New York: the cargo was loaded in New Orleans and unloaded in Turkey, and damage to the shipment of the corn oil may have occurred on the high seas.

Turkey has a far greater interest than New York deciding this controversy. The action involves goods being shipped through Turkey. A Turkish cargo company is accused of damaging the goods. Another Turkish company, the consignee, inspected the cargo and forwarded the goods. Authorized Turkish maritime officers investigated the entire episode and prepared official reports. Two Turkish tribunals have already proceeded to adjudicate some of the issues raised in plaintiff's first count of the amended complaint. Turkey thus seems to be the most appropriate forum.

Moreover, Turkish law will govern, at least in part, since the bills of lading instruct the court to apply Turkish law and because the contract between plaintiff and defendant was in part performed in Tur-

502

key. The courts in Turkey are in the best position to find and apply its own law. The need to apply foreign law points towards dismissal of this action.[7]

Finally, in a federal forum non conveniens inquiry, the court must also determine whether there exists an alternative forum. There are three circumstances under which courts have found a lack of an alternative forum: when the defendant is not "amenable to process" in the other forum; when the proposed alternative forum does not permit litigation of the subject matter of the dispute; and in "rare circumstances," when the remedy offered by the other forum is "clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. *See also, Rudetsky v. O'Dowd*, 660 F.Supp. 341, 346 (E.D. N.Y.1987). None of these circumstances exist in this action.

First, all defendants have consented to jurisdiction in Turkey and there is no procedural bar to timely recommencement of this action in Turkey. Accordingly, all defendants are amenable to process in the alternative forum. Second, Turkey has already initiated judicial proceedings concerning this matter so there is no question as to whether Turkish courts will adjudicate this subject matter. Finally, Plaintiff has not demonstrated that it would be left without a reasonable remedy if this case was to be heard in an Turkish forum. Indeed, Turkey has previously been found to be an adequate forum for an admiralty action. *See, Allianz Versicherungs-Aktiengesellschaft v. S.S. Eskisehir*, 334 F.Supp. 1225, 1227 (S.D.N.Y.1971) (defendant had made a showing that a Turkish Court would be able to justly hear the controversy.) The balance of both public and private interest factors thus clearly point towards an alternate forum.

### III. *Conclusion*

After a careful balancing of relevant factors, this Court grants defendants' mo-

tion to dismiss on the grounds of forum non conveniens.

SO ORDERED.

---

7. Decisions regarding forum non conveniens inquiries have frequently held that the need to apply foreign law favors dismissal. See, e.g., *Piper Aircraft*, 454 U.S. at 260, 102 S.Ct. at 268; *Calavo Growers*, 632 F.2d at 967; *Schertenlieb*, 589 F.2d at 1165.