**NIPPON FIRE & MARINE INSURANCE COMPANY, LTD., Plaintiff,**

v.

**M.V. EGASCO STAR and Egypt Azov Shipping Co., Defendants.**

**No. 94 Civ. 6813 (DC).**

United States District Court, S.D. New York.

Sept. 28, 1995.

Maloof & Browne by David T. Maloof, New York City, for Plaintiff.

Cichanowicz, Callan & Keane by Lawrence V. Cichanowicz, Patrick M. DeCharles, New York City, for Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

This Carriage of Goods by Sea Act ("COGSA") case concerns a shipment of several thousand reels of paper from New Orleans, Louisiana to Alexandria, Egypt. Plaintiff Nippon Fire & Marine Insurance Co., Ltd. ("Nippon"), a Japanese company, was the insurer of the cargo. Nippon has a wholly owned subsidiary located in New York, New York. Defendant Egypt Azov Shipping Company ("EAS") is the owner and operator of the defendant merchant vessel Egasco Star that carried the cargo from the United States to Egypt. Defendant EAS has moved to dismiss on the grounds of *forum non conveniens*. Subsequently, Nippon moved for sanctions against EAS for failing to com-ply with discovery requests. EAS's motion to dismiss is granted for the reasons and subject to the conditions described below. Nippon's motion for sanctions is also granted to the extent set forth below.

### BACKGROUND

In December of 1993, Itochu International, Inc. ("Itochu"), a New York corporation, delivered 3,047 reels of printing paper for shipment aboard the Egasco Star at New Orleans. Several days later two more shipments totalling 7,208 additional reels of paper were delivered to the Egasco Star at Lake Charles, Louisiana. The shipments were delivered according to the terms of three separate bills of lading prepared and delivered to Itochu in New York.[1] The bills of lading indicate that each of the shipments was loaded "clean on board," and destined for the port of Alexandria in Egypt for delivery to the consignee, Allam Industries, in Cairo, Egypt. At some point either during the voyage or after the Egasco Star's arrival in Alexandria, a significant number of the reels were damaged. Agents of Lloyd's of London in Egypt prepared survey reports of the damage.[2] According to these reports the Egasco Star arrived in Alexandria on February 16, 1994. At various times from February 19, 1994 until March 7, 1994, the paper was unloaded onto trucks at quayside for transport to the warehouses of Allam Industries. The consignee apparently discovered the damage upon delivery. The survey reports note that 818 reels from the first consignment, 648 reels from the second consignment, and 151 reels from the third consignment were damaged variously by water, tears and gouges, and squashed reel cores in the amount of nearly $150,000.

The survey reports do not reach any definite conclusion as to the location or time of the damage.[3] The report for the first ship-

---

1. The bills of lading for the three shipments are attached as Exhibit 3 to Attorney's Declaration in Support of Defendant Egypt Azov Shipping Co.'s Motion to Dismiss ("Atty.Decl.").

2. One survey report for each consignment was prepared, and the three are attached as Exhibits 5–7 of the Reply Declaration in Support of De-fendant's Forum Non Conveniens Motion ("Reply Decl.").

3. Each of the survey reports contains a "Schedule" with the following paragraph:

 *CAUSE OF LOSS*
 As we were not present at any time during transport of the goods we cannot say with

ment does indicate, however, that while the customs inspection did not note any damage, a "Ph.copy of Police Statement of Fact, no. 482 dd. 1 March 1994, requested by the Consignee's Clearing Agent at Alex port at time of discharge of goods states that numerous reels had the paper torn, ripped and some reels were damp." (Reply Decl. Exh. 5). As insurer of the cargo, Nippon was required to pay claims to Allam Industries as a result of the damage to the reels of paper. Nippon then brought this action seeking recovery of those funds paid to Allam Industries pursuant to its policies.

## DISCUSSION

### I. Defendant's Motion to Dismiss

Nippon raises three main objections to defendant's motion. It argues that (1) Egypt is not an adequate alternative forum; (2) a balancing of private and public factors favors upholding plaintiff's choice of forum; and (3) defendant's delay in making this motion should prevent it from prevailing on the motion.

### A. Standards for Determining Forum Non Conveniens Motion

■ Under the common law doctrine of *forum non conveniens*, a court with proper jurisdiction and venue over a matter may refrain from hearing the case if another significantly more appropriate forum exists. *See Nationsbank of Florida v. Banco Exterior de Espana*, 867 F.Supp. 167, 169 (S.D.N.Y. 1994). To determine whether a complaint should be dismissed on *forum non conveniens* grounds, I must consider two issues: 1) the availability of an alternative forum and 2) the balance of private and public interests weighed against the plaintiff's choice of forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 254 n. 22, 102 S.Ct. 252, 258, 265 n. 22, 70 L.Ed.2d 419 (1981). While

the moving party bears the burden of showing that an alternative forum is clearly more appropriate, *Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F.Supp. 483, 489 (S.D.N.Y.1985), the decision to grant or deny the motion to dismiss is entirely within my discretion. *Piper Aircraft Co.*, 454 U.S. at 257, 102 S.Ct. at 267.

### B. Adequacy of Alternative Forum

■ The first step in conducting a *forum non conveniens* inquiry is to determine whether an adequate alternative forum exists. There are three instances when courts have determined that the proposed alternative forum is inadequate: (1) when the defendant is not "amenable to process" there; (2) when the proposed alternative forum does not permit litigation of the subject matter of the dispute; and (3) in "rare circumstances" when the remedy offered by the alternative forum is "clearly unsatisfactory." *Monsanto Int'l Sales Co. v. Hanjin Container Lines, Ltd.*, 770 F.Supp. 832, 838 (S.D.N.Y.1991), aff'd, 962 F.2d 4 (2d Cir.1992); *Travelers Indem. Co. v. S/S Alca*, 710 F.Supp. 497, 502 (S.D.N.Y.), aff'd, 895 F.2d 1410 (2d Cir.1989); *see also Piper Aircraft Co.*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

■ None of these factors eliminates Egypt as an alternative forum for Nippon's action. First, EAS is an Egyptian corporation with its principal place of business in Egypt. Thus, it is amenable to process in Egypt. In fact, EAS has volunteered that it is subject to jurisdiction in Egypt. (Def.Mem. at 5). Second, Egypt has acceded to the Brussels Convention for the Unification of Certain Rules Relating to Bills of Lading, 51 Stat. 233 (Hague Rules), on which COGSA is modeled, which governs admiralty disputes between parties of different nationalities. (Atty Decl. Exh. 4). Thus, it appears that an Egyptian court has subject matter jurisdiction over this dispute. Third,

confidence where or when the loss occurred. However, in our experience, the nature of the loss is consistent with rough handling and we are aware that these types of goods are subject to bad handling conditions at Alex port especially during discharging of vessel and loading onto trucks at quayside for onward transport.

In the case of the first and second consignments the "cause of loss" paragraph also indicated that the surveyor's opinion was that the rippling of the paper was due to the rolls "being in a very humid/damp/moist atmosphere but where or when we cannot ascertain." (Reply Decl. Exhs. 5–7).

there is no evidence that the remedy available to Nippon is "clearly unsatisfactory."

Moreover, Nippon's concerns that an Egyptian court would not hear this case are unpersuasive. Dismissal of this action will be conditioned on the exercise of jurisdiction by an Egyptian court. *See Calavo Growers v. Belgium,* 632 F.2d 963, 968 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). Should the institution of this suit not be possible in Egypt, Nippon will be permitted to re-commence its action in this jurisdiction. Accordingly, Egypt is an adequate alternative forum for this action.

## C. *Balance of Interests*

■ The Supreme Court has established a balancing test that courts must apply in determining whether to dismiss an action on *forum non conveniens* grounds. The court must balance both the private interests affecting the convenience of the litigants and the public interests affecting the convenience of the forum. *Gilbert,* 330 U.S. at 508–509, 67 S.Ct. at 843. These factors must also be weighed against plaintiff's choice of forum. Although the plaintiff's choice of forum is afforded considerable deference when the plaintiff is a United States citizen, the presumption applies with less force when the plaintiff or real party in interest is not a United States citizen. *Piper Aircraft Co.* 454 U.S. at 255, 102 S.Ct. at 266; *R. Maganlal & Co. v. M.G. Chemical Co.,* 942 F.2d 164, 167–68 (2d Cir.1991).

### 1. *Private Interests of the Litigants*

■ The private interests of the parties to be weighed in considering a *forum non conveniens* motion include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co.,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. Here, these factors favor an Egyptian forum.

Nippon maintains that there is no real factual dispute as to responsibility for the damage to the cargo. (Pl.Mem. at 2).[4] Alternatively, Nippon claims that any dispute as to liability can be resolved by documentary evidence. Such documentary evidence includes the bills of lading, invoices, packing lists, insurance documents, and the survey reports of the damage. (Pl.Mem. at 10–11). Each of these documents was executed in English, and all but the survey reports were either prepared or received by plaintiff in New York. The existence of these documents, Nippon argues, tips the balance of private interest considerations in its favor. However, these documents are not likely to lead to resolution of liability in this case. Defendant's submissions do not challenge the extent of the damage or the amount of the claim. Hence, the fact that these documents were executed in English and prepared in the United States does not weigh heavily in deciding whether New York is the more suitable forum for determining who is responsible for the damage to the cargo.

■ The important documents in resolving this dispute are the survey reports of the damage. And while those documents may have been prepared in English, the surveys were conducted in Egypt by an Egyptian agent of Lloyd's of London and on the basis of examination of forms and interview of persons in Egypt.

The surveyor's findings as to the cause of the damage were not conclusive. Instead, the reports indicated that some of the damage may have been caused in the unloading of the Egasco Star, or the subsequent loading onto trucks for transport to Allam's warehouse. In addition, the reports indicated that the water damage was caused by storage in a damp, humid or moist environment, but could not determine where or when this might have occurred. These observations are essentially the heart of the dispute in this case. EAS will likely contend that the cargo was damaged after it was unloaded from the Egasco Star, and Nippon will (and does) contend that the cargo was

4. Plaintiff's Memorandum in Opposition to Motion to Dismiss, and in Support of Motion to

Transfer will be cited throughout as "Pl.Mem. at ___."

damaged beforehand. Moreover, a "view of the premises" may be important in this case; the ship is an Egyptian ship, the warehouse and quayside facilities are in Egypt, and the damaged cargo itself remains in Egypt. In any event, it is clear that determination of the most relevant questions will necessarily turn on information and evidence to be found in Egypt.

Nippon additionally argues that the presence of its own United States agent, Itochu's packers, and the ship brokers in New York weighs in favor of keeping the case here. (Pl.Mem. at 11). None of these persons, however, is likely to provide information relevant to the central issue, namely where and when the cargo was damaged.[5] Rather, persons having first hand knowledge of the facts important to the resolution of this dispute (*e.g.*, the surveyor, customs and/or port police officials, and employees of EAS and Allam Industries) are all in Egypt. This Court does not have jurisdiction over any of the persons who handled the cargo or who otherwise might have first hand knowledge of the relevant facts, and hence I could not compel the testimony of the witnesses most able to provide information necessary for resolution of Nippon's claim.

While it is certainly true that the advances of the modern age have significantly reduced both the time and expense of intercontinental travel, when the greater number and more relevant witnesses are located in a foreign forum, common sense suggests that the litigation proceed in that forum. In sum, the ease of access to testimonial and other proof in this case weighs heavily in favor of Egypt.

### 2. *Public Interest in the Forum*

■ Public interest considerations include the alternative forum's interest in deciding the dispute, court administrative concerns, and conflict of laws and foreign forum law

application issues. *Piper Aircraft Co.*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. Conflict of law and the application of foreign law issues are not implicated here as both parties agree that the case is subject to COGSA. 46 U.S.C. § 1300 *et seq.* Nor do I believe that the administrative burdens of the Court should be a dispositive consideration. Accordingly, I turn to the interests of the two forums in the resolution of the claim.

■ New York's connection to this dispute is tangential. While it is true that many of the documents related to the shipments were prepared here, as noted above, the documents most relevant to the dispute were not. And while it is also true that Nippon's New York office handles all of its U.S. claims, it is hard to see what interest New York has in the claim of a foreign-owned subsidiary against an Egyptian shipper for subsequent damage to goods shipped from Louisiana to Egypt. By contrast, Egypt's interest in this litigation is substantial. The suit is brought against an Egyptian shipping company. It is brought for damage that, according to the survey reports, may well have occurred while the goods were in an Egyptian port. And the original party in interest and subrogor of this claim (*i.e.*, the owner of the cargo) is an Egyptian company (Allam).

Moreover, contrary to Nippon's arguments, there is no overriding local interest in having a COGSA claim resolved in a federal forum. Numerous decisions have considered whether the public interest in uniformly interpreting COGSA should prevent courts from applying the *forum non conveniens* doctrine in COGSA cases. These decisions have consistently rejected such a theory, holding that a court may dismiss a COGSA suit on *forum non conveniens* grounds. *Monsanto Int'l*, 770 F.Supp. at 836–37; *Travelers Indem. Co.*, 710 F.Supp. at 499;

---

5. Plaintiff claims that its New York representative will "testify concerning and to establish plaintiff's standing," the ship brokers will testify concerning "the terms in the bill of lading contract," and the Itochu employees will testify regarding the adequacy of the packing prior to shipment. (Pl.Mem. at 11). Of the three, only the Itochu employees seem likely to provide useful information. There is no indication that standing, not an issue so far, will become one; there is no apparent dispute or alleged irregularity concerning the bills of lading; and since plaintiff's survey reports indicated damage caused by water and rough handling in unloading, and the damaged cargo apparently remains warehoused in Egypt, it seems unlikely that the adequacy of the packing will require much if any testimony.

**170**

*see also Contact Lumber Co. v. P.T. Moges Shipping Co.,* 918 F.2d 1446, 1451 (9th Cir. 1990) (dismissing COGSA claim on *forum non conveniens* grounds); *Union Ins. Soc'y of Canton v. S.S. Elikon,* 642 F.2d 721, 725 (4th Cir.1981) (COGSA case may be dismissed on *forum non conveniens* grounds); *Fireman's Fund Ins. Co. v. Pan Ocean Bulk Carriers, Ltd.,* 559 F.Supp. 527, 528 (N.D.Cal.1983) (same). The Second Circuit has also recognized the applicability of the *forum non conveniens* doctrine to admiralty cases, stating that "it is in the field of admiralty that our federal courts have applied the doctrine of *forum non conveniens* most flexibly and over the longest period of time." *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 153 (2d Cir.) (*en banc*), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Nippon raises no public interest factors either requiring a departure from this established line of case law or establishing a local interest in this dispute. Accordingly, public interest factors also favor an Egyptian forum.

### D. *Defendant's Delay*

Finally, Nippon contends that EAS should not be able to seek dismissal on *forum non conveniens* grounds given the current procedural posture of this case. Although, as discussed below, I agree that Nippon is entitled to sanctions for EAS's failure to respond to discovery requests, I do not find that EAS's motion to dismiss is so untimely as to require its denial.

 Counsel for EAS has submitted an affidavit stating that EAS sought permission

6. Nippon's insinuation that EAS filed its motion to dismiss to avoid a default judgment for failure to produce discovery is misleading. In fact, EAS filed its motion to dismiss *before* Nippon filed its motion for sanctions.

7. I note that neither the plaintiff nor the real party in interest, Allam Industries, is a United States citizen. Thus, the presumption in favor of upholding Nippon's choice of forum is not as great.

8. In letter briefs submitted to the Court, the parties discussed the impact of the Supreme Court's recent decision in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* — U.S. —, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Overruling the Second Circuit's decision in *Indussa*

from Judge Mukasey (to whom this case was previously assigned) on December 20, 1994 to move for dismissal on *forum non conveniens* grounds. Furthermore, defendant's motion was made on March 9, 1995, seven weeks before the discovery cut-off date and less than six months after the complaint was filed. Finally, the lawsuit is less than a year old. Thus, defendant's motion is not so untimely as to override the aforementioned factors that favor dismissal on *forum non conveniens* grounds.[6]

Accordingly, after balancing both public and private interests in this litigation and other relevant factors,[7] I have determined that this dispute would be most efficiently and conveniently resolved in an Egyptian forum.[8] I therefore grant EAS's motion to dismiss, subject to certain conditions set forth in the conclusion of this opinion. *See Piper Aircraft Co.,* 454 U.S. at 257 n. 25, 102 S.Ct. at 267 n. 25; *Blanco v. Banco Industrial de Venezuela,* 997 F.2d 974, 984 (2d Cir. 1993).

### II. *Plaintiff's Motion for Sanctions*

Nippon has moved for sanctions, including a default judgment, on the grounds that EAS has wilfully failed to respond to discovery demands.

In December 1994, Nippon apparently served three sets of discovery requests: document requests, interrogatories, and a deposition notice. (Maloof Sanctions Aff. ¶ 5). In January 1995, EAS served a response to the document requests, consisting of (i) the production of no more than a few documents,[9]

*Corp. v. S.S. Ranborg,* 377 F.2d 200 (2d Cir. 1967), the Court in *Sky Reefer* held that COGSA does not nullify foreign forum selection clauses. — U.S. at —, 115 S.Ct. at 2329. In deciding the pending motion to dismiss, I have not relied on *Sky Reefer,* although I note that it provides further support for my conclusion that the case should be litigated in Egypt.

9. Nippon's counsel contends that EAS produced at that time only one document, the bill of lading. (Maloof Sanctions Aff. ¶ 8(a)). EAS's counsel identifies a few documents that have been produced, although he does not indicate when they were produced. (Cichanowicz Sanctions Aff. ¶ 6).

(ii) objections, (iii) statements to the effect that other responsive documents would be produced "if they exist, when available." (Maloof Sanctions Aff. Exh. F). EAS never submitted formal responses to the interrogatories or the deposition notice. (Maloof Sanctions Aff. ¶ 8(b, c)). After Nippon wrote to Judge Mukasey about EAS's failure to respond to discovery requests, EAS's counsel wrote Judge Mukasey advising:

> we have requested documents and information from the defendant who is located in Egypt. The responses, however, have not yet been forthcoming.

(Maloof Sanctions Aff. Exh. I). Apparently, EAS's counsel still has not received the requested documents and information from its client.

In February 1995, Nippon served a set of requests for admissions ("RFA's"). (Maloof Sanctions Aff. ¶ 13). EAS served a response that consisted of answers to some of the RFA's, objections to others, and the statement that certain RFA's could not be admitted or denied. (Maloof Sanctions Aff. Exh. K). It does appear that the RFA's were answered by EAS's counsel without the benefit of assistance from his client.

Judge Mukasey had originally set the discovery cut-off for April 28, 1995. After the case was reassigned to me, I ruled that if EAS did not provide the missing discovery by May 16, 1995, Nippon could file a motion for sanctions. EAS did not provide the necessary discovery, and this motion followed.

In his affidavit in opposition to the motion for sanctions, EAS's attorney represents that he made "timely, diligent and good faith attempts" to obtain from his client the documents and information necessary to comply with its discovery obligations. (Cichanowicz Sanctions Aff. ¶ 3). It is clear, then, that EAS has ignored its own counsel's requests for documents and information, and it is apparent that EAS has indeed wilfully failed to comply with its discovery obligations.

 Nonetheless, while I believe that EAS's conduct certainly is sanctionable, a default judgment would be too harsh a sanction at this juncture. Instead, EAS is hereby ordered, within 30 days after entry of this decision, to (1) produce the documents requested in plaintiff's first set of document requests, (2) answer plaintiff's first set of interrogatories, and (3) supplement and verify its responses to plaintiff's RFA's. If EAS fails to comply with this order in a timely fashion, a default judgment will be entered against it. In addition, Nippon is hereby granted, pursuant to Rule 37(a)(4), its reasonable expenses incurred in making this motion, including attorneys' fees. Within 10 days after entry of this decision, Nippon shall submit an affidavit providing sufficient information to permit me to determine an appropriate award of attorneys' fees and costs.

### CONCLUSION

For the reasons set forth above, the case is dismissed on the grounds of *forum non conveniens* subject to the following conditions:

1. EAS will comply with this Court's rulings concerning outstanding discovery, as set forth above.

2. EAS will submit to the jurisdiction of an Egyptian court;

3. The courts of Egypt have, and will exercise, jurisdiction over this action;

4. EAS agrees to waive any statute of limitations defense based on the period from the date that this action was filed to the date that the dismissal of the complaint becomes effective.

An order of dismissal will not be entered until the parties present sufficient evidence that conditions 1, 2, and 4 have been satisfied. If the Egyptian courts decline to exercise jurisdiction over this case, plaintiff may re-file this lawsuit, in which case it will be assigned to the undersigned.

SO ORDERED.